RICHARD JONES, Indiv. and as Adm'r of the Estate of Marie Jones, Deceased, *et al.*, Plaintiffs-Appellees, v. POLISH FALCONS OF CITY OF CHICAGO HEIGHTS, Defendant-Appellant (Ricky Singleton, Indiv. and d/b/a The Whole Truth Pentecostal Church, *et al.*, Defendants).

First District (4th Division)   No. 1—92—1399

Opinion filed March 31, 1993.

Lord, Bissell & Brook (Hugh C. Griffin and Kathryn C. Wyatt, of counsel) and Stern & Rotheiser (Joel W. Ostrander, of counsel), both of Chicago, for appellant.

David S. Pochis and Alan D. Katz, both of Chicago, for appellees.

PRESIDING JUSTICE JIGANTI delivered the opinion of the court:

The plaintiffs filed a negligence action against the defendants, the Polish Falcons of the City of Chicago Heights, a fraternal organization, Reverend Ricky Singleton, and Juanita Singleton, seeking damages resulting from a fire. The plaintiffs alleged that the defendants owned and operated a building in Chicago Heights and failed to exercise ordinary care in maintaining the building, permitted the building to remain in a dangerous condition, and failed to correct building code violations. The plaintiffs further alleged that as a result of the defend-

ants' negligence, the building caught on fire and four individuals who resided in the building died of smoke inhalation and three additional residents were injured. The jury returned a verdict of $384,000 in favor of the plaintiffs and against all of the defendants. The plaintiffs were the co-administrators of the estates of the decedents, an injured person, and the guardians of two injured minors.

The Polish Falcons have appealed the jury verdict and claim that they did not have a duty to maintain or repair the premises at the time of the fire and that the jury was improperly instructed on their duty. The Polish Falcons also argue that they were entitled to a judgment notwithstanding the verdict or a new trial because there was no evidence to establish that their alleged negligence proximately caused the deaths or injuries.

The property at issue was a two-story brick building located in the City of Chicago Heights. The building had been used for many years as a social hall for club meetings, dances, and weddings. In 1980, the Polish Falcons were the owners of the building. In October of 1980, the City of Chicago Heights inspected the building and reported various building code violations including falling and water-damaged ceiling tiles throughout the building, hanging electrical wires, and exposed ceiling rafters and beams. The building inspector reported that the building was not fit for human habitation.

In March of 1981, the Polish Falcons entered into a real estate sales contract with Reverend Ricky Singleton, who intended to purchase the building and use it as a church. The closing was scheduled for September of 1981. The Polish Falcons allowed Singleton to take possession of the building prior to the closing date. Singleton agreed to make repairs in the building in order to comply with the building code violations. Singleton made some of the required improvements while in possession of the building. When Singleton did not make the final payment on the day of closing, the sale of the building did not take place. In November of 1981, a building inspector revisited the property and reported that Singleton was running a school for 8 to 10 students in an upstairs attic. The report indicated that there was no ventilation in the building, the attic appeared unsafe, and electrical wires were hanging from the ceiling and walls. The Polish Falcons locked Singleton out of the premises and put a padlock on the door in April or May of 1982.

In June of 1982, the Polish Falcons turned the building over to Juanita Singleton, Ricky Singleton's mother, for $600 a month. There is no evidence of any written agreement between Juanita and the Polish Falcons. In August of 1982, Juanita's friend, Mary Jones, and her

five children moved into the building and used it as their living quarters. In September of 1982, the building inspector returned to the premises and found people living in the building. The inspector observed that the condition of the building was no different than that which he found in October of 1980. The following day, the building was posted as "[u]nfit for human habitation." Jones and her five children continued to reside in the building, and in November of 1982, Gloria Pickens-Driver also moved into the building.

In December of 1982, the building caught on fire and burned to the ground. Marie Jones and three of her children died of smoke inhalation. Gloria Pickens-Driver and two of Marie Jones' children suffered injuries from smoke inhalation.

In order for a plaintiff to prevail in a negligence case, the plaintiff must demonstrate that the defendant owed a duty to the plaintiff and that the defendant's breach of that duty factually and legally caused the plaintiff's injuries. (*Ward v. K mart Corp.* (1990), 136 Ill. 2d 132, 140, 554 N.E.2d 223, 226.) We first address the Polish Falcons' assertion that they did not owe a duty to the plaintiffs to maintain and repair the building.

The Polish Falcons argue that, whether as a contract seller or landlord, they had no duty to maintain and repair the premises at issue. As a seller of the property to Singleton, the Polish Falcons assert that they are not liable for injuries on the premises after transferring control of the property. We do not believe there is merit to this argument since the evidence shows that the sale of the property to Singleton was abandoned when Singleton did not make the specified payment at the September 1981 scheduled closing and the Polish Falcons placed a padlock on the premises shortly thereafter.

As landlord, the Polish Falcons contend that they had no duty to maintain and repair premises which were under the exclusive control of the alleged tenants. The Polish Falcons cite various cases for the proposition that a landlord has a duty to use ordinary care and maintain the portion of the premises over which he retains control. However, where a defective condition exists on the premises leased to a tenant and under the tenant's control, the landlord is not liable for injuries caused by the condition. See, *e.g.*, *Vesey v. Chicago Housing Authority* (1991), 145 Ill. 2d 404, 583 N.E.2d 538; *Lamkin v. Towner* (1990), 138 Ill. 2d 510, 563 N.E.2d 449.

The plaintiffs counter that the Polish Falcons violated a municipal ordinance by permitting Juanita Singleton access to the building when it was in a dangerous condition and the violation of this ordinance imposed liability. The Chicago Heights ordinance reads as follows:

"It shall be unlawful to maintain or permit the existence of any dangerous or abandoned building or structure in the City, and it shall be unlawful for the owner, owner's agent, occupant or person in custody of any dangerous building or structure to permit the same to remain in a dangerous condition, or to occupy a building or permit it to be occupied while it is or remains in a dangerous condition." (Chicago Heights, Ill., Code of Ordinances ch. 11, art. II, §11—23 (19___).)

The plaintiffs cite various cases in support of their position that because the Polish Falcons were clearly in violation of the Chicago Heights ordinance, they are liable for the injuries which resulted from the violation. See, *e.g.*, *Dini v. Naiditch* (1960), 20 Ill. 2d 406, 170 N.E.2d 881; *Mangan v. F.C. Pilgrim & Co.* (1975), 32 Ill. App. 3d 563, 336 N.E.2d 374; *City of Chicago v. L.J. Sheridan & Co.* (1958), 18 Ill. App. 2d 57, 151 N.E.2d 451.

The Polish Falcons rejoin that in all of the plaintiffs' cases, the landlord retained possession and control of the premises. Since the Polish Falcons did not retain possession and control of the premises, this rule of law should not apply to them.

■ It is well established that the violation of a statute or ordinance designed for the protection of human life or property is *prima facie* evidence of negligence, and that the party injured thereby has a cause of action, provided that he comes within the purview of the particular ordinance or statute, and the injury has a direct and proximate connection with the violation. *Dini v. Naiditch* (1960), 20 Ill. 2d 406, 170 N.E.2d 881; *Ney v. Yellow Cab Co.* (1954), 2 Ill. 2d 74, 117 N.E.2d 74.

■ Municipal ordinances proscribing the continued use of a structure which violates building codes have consistently been held to be designed for the protection of human life. (See, *e.g.*, *Dini v. Naiditch* (1960), 20 Ill. 2d 406, 170 N.E.2d 881; *Mangan v. F.C. Pilgrim & Co.* (1975), 32 Ill. App. 3d 563, 336 N.E.2d 374.) Obviously, the Chicago Heights ordinance which prohibits an owner from allowing anyone to occupy a building with an uncorrected dangerous condition is designed for the protection of human life. Equally obvious is that the plaintiffs fell within the class of persons intended to be protected by the ordinance, and the plaintiffs' harm was the kind that the ordinance was intended to prevent. At the time of the fire, the Polish Falcons were clearly the owners of the building. The Polish Falcons were in violation of various building codes since October of 1980. The Polish Falcons allowed Juanita Singleton to occupy the premises for $600 a month in June of 1982 while the building was still in a dangerous con-

dition, as evidenced by the September 1982 report that the building was unfit for human habitation. When an owner violates an ordinance, it is not a defense that the owner was not in possession and control of the premises. Owners "can not avoid such liability on the ground that the premises were leased." (*Dini v. Naiditch* (1960), 20 Ill. 2d 406, 421, 170 N.E.2d 881, 888.) As in *Dini*, there is evidence that the Polish Falcons violated the ordinance and thus incurred a duty to the plaintiffs.

The Polish Falcons have also argued that the plaintiffs failed to prove proximate causation and, accordingly, contest the propriety of the trial court's denial of their motions for judgment *n.o.v.* and a new trial. The Polish Falcons claim that the court should have granted their motions because the plaintiffs failed to establish that their failure to repair or replace old tiles and timbers in the building proximately caused plaintiffs' injuries and the deaths of plaintiffs' decedents. The Polish Falcons contend that the plaintiffs' evidence of proximate causation is speculative and conjectural. The Polish Falcons argue that no one at trial identified the source of the smoke. Additionally, other potential materials in the building could have caused the smoke, and there was no evidence that the replacement of ceiling tiles or roof timbers would have prevented the smoke.

A judgment *n.o.v.* should be granted "only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504, 513-14.) Further, a motion for a new trial will be granted if, after weighing the evidence, the trial court determines that the verdict is against the manifest weight of the evidence. (*International Meat Co. v. Bockos* (1987), 157 Ill. App. 3d 810, 510 N.E.2d 1013.) It is within the sound discretion of the trial court whether to grant a motion for a new trial, and absent a clear abuse of that discretion, the decision of the trial court will remain undisturbed. *Villa v. Crown Cork & Seal Co.* (1990), 202 Ill. App. 3d 1082, 1089, 560 N.E.2d 969.

Both standards are difficult ones and the movant must show that there was such an overwhelming amount of evidence in his favor that the verdict against him cannot stand. Moreover, a verdict cannot be set aside merely because the jury could have determined the credibility of the witnesses differently or drawn different inferences of fact, and where credible evidence supports the verdict, the court may not say that other conclusions are more reasonable. *Didier v. Jones* (1978), 61 Ill. App. 3d 22, 377 N.E.2d 572.

We begin with a discussion of what the plaintiffs were required to show to rise above the level of speculation and conjecture and cross into the realm of causation.

"The plaintiff must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result. A mere possibility of such causation is not enough; and when the matter becomes one of pure speculation or conjecture, or the probabilities are at best balanced, it becomes the duty of the court to direct a verdict for the defendant. ***

The plaintiff is not, however, required to prove the case beyond a reasonable doubt. The plaintiff need not negative entirely the possibility that the defendant's conduct was not a cause, and it is enough to introduce evidence from which reasonable persons may conclude that it is more probable that the event was caused by the defendant than that it was not. The fact of causation is incapable of mathematical proof, since no one can say with absolute certainty what would have occurred if the defendant had acted otherwise." (W. Keeton, Prosser & Keeton on Torts §41, at 269-70 (5th ed. 1984).)

In the instant case, it was not required that the plaintiffs prove with mathematical precision which building code violation caused the smoke. Nor were the plaintiffs required to prove that no other type of material in the building, such as carpets and couches, contributed to the smoke, or that if the building code violations had all been corrected, there would have been no injuries from smoke inhalation. The plaintiffs were only required to introduce enough evidence from which a jury could conclude that it was more probable than not that the smoke which resulted in deaths and injuries was caused by the defendants' failure to repair the various building code violations. In short, the plaintiffs had to establish that the violation of the ordinance was a substantial factor in causing the harm. W. Keeton, Prosser & Keeton on Torts §41, at 264-69 (5th ed. 1984); Restatement (Second) of Torts §431, Comment a (1965); see also *Thacker v. U N R Industries, Inc.* (1992), 151 Ill. 2d 343, 603 N.E.2d 449; *Hare v. Foster G. McGaw Hospital* (1989), 192 Ill. App. 3d 1031, 549 N.E.2d 778.

■ We believe that there is sufficient evidence in the record to support the jury's verdict. As we mentioned earlier in this opinion, there was extensive testimony from the Chicago Heights building inspector outlining three inspections which took place between October 1980 and September 1982. The inspector determined in October 1980 that the building was in "deplorable condition" and "not fit for hu-

man habitation." The inspector described the building as having falling ceiling tiles, water-damaged ceiling tiles throughout the building, exposed wood rafters and beams, hanging electrical wires, and numerous other violations. By September of 1982, the inspector testified that the condition of the building was essentially the same and the building was posted "[u]nfit for human habitation." A four-page building inspection report was admitted into evidence which detailed the required repairs throughout the building.

Gloria Pickens-Driver, who resided on the second floor of the building, testified that throughout the premises there were hanging ceiling tiles, exposed rotted wood, insulation coming out of the ceiling, and water-damaged wood. Jones, who also resided in the building, further testified that he observed rain coming through the ceiling, and exposed cracked and rotten timber on the ceiling.

Gloria Pickens-Driver testified that on the day of the fire, she awoke when she smelled smoke. She observed that the smoke was coming from the door that led downstairs, through the ceiling tiles, and from the wood on the floor. She woke up the other residents and called the fire department. As she tried to escape through a window, she could not catch her breath because the smoke in the air was getting worse. She became unconscious and fell from the window.

Fireman Wojslaw testified that when he arrived at the building, it was engulfed in fire. He described a "tremendous amount of black smoke" coming from certain windows. Wojslaw stated that "particles of incomplete combustion" cause the kind of heavy smoke that he witnessed. Wojslaw defined incomplete combustion as "when wood, paper, clothing, and rugs are just in a smoldering stage." He testified that he observed a lot of old ceiling tiles and a lot of rotting timbers in a front section of the building that was not yet involved in the fire and that these were the kinds of instrumentalities that cause incomplete combustion. Other testimony established that smoke inhalation caused the plaintiffs' injuries and deaths of the decedents.

We believe this evidence afforded a reasonable basis for the jury to conclude that it was more probable than not that the conduct of the defendant in allowing the plaintiffs to occupy the building while it remained in a clearly dangerous condition was a proximate cause of their resulting injuries and deaths from smoke inhalation. Therefore, we conclude that the court did not err in denying the defendants' motions for a judgment *n.o.v.* and a new trial because the jury's verdict was not against the manifest weight of the evidence, nor did the evidence so overwhelmingly favor the defendants that the jury's verdict cannot stand.

■ Finally, the Polish Falcons have objected to plaintiffs' jury instruction No. 21, which states:

"A landlord is not generally liable for injuries resulting from defective conditions of the premises which are not in control of the landlord.

However, where the landlord gives possession of the property to another with actual knowledge of defective or dangerous conditions which remain uncorrected, the landlord is liable to third persons for injuries caused by the defects to the same extent as if the landlord were in control or possession of the property."

The Polish Falcons contend that the instruction does not accurately state the law as it applies to them because they were not in control or possession of the property. As we discussed in an earlier portion of this opinion which addressed the Polish Falcons' duty under the ordinance, the Polish Falcons cannot avoid liability on the grounds that they were not in possession and control of the building. In the instant case, the jury instruction at issue depicts the liability which is imposed by virtue of the ordinance.

For all of the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.

JOHNSON and CAHILL, JJ., concur.