LEILA PHARR, as Adm'r of the Estate of Bessie Levy, Deceased, Plaintiff-Appellant, v. CHICAGO TRANSIT AUTHORITY, Defendant-Appellee.

First District (1st Division)   No. 1—89—2370

Opinion filed September 30, 1991.

Ronald Kirk Goulding and Victor H. Goulding, both of Chicago, for appellant.

Hoffman, Burke & Bozick, of Chicago (Edmund J. Burke and Gary W. Bozick, of counsel), for appellee.

JUSTICE BUCKLEY delivered the opinion of the court:

Leila Pharr (plaintiff), administrator of the estate of Bessie Levy (decedent), appeals the jury verdict in favor of defendant Chicago Transit Authority (CTA). Plaintiff contends that defense counsel's (1) comment on plaintiff's failure to produce a witness was improper and (2) tactics and argument concerning the bus driver's report were improper and prejudicial, and that the trial court erred in (1) permitting defense counsel to read into evidence portions of a deposition which included hearsay statements allegedly made to the deponent by a witness who was never called to testify, (2) allowing defense counsel to prejudice the all-white jury by suggesting the illegitimacy of decedent's lineal heirs, (3) allowing the bus driver to give expert testimony regarding a door interlocking device, (4) failing to instruct the jury concerning a violation of an ordinance, and (5) failing to give the jury the full proximate cause instruction. Plaintiff also contends that plaintiff's counsel was wrongfully precluded from arguing that the bus driver had been instructed not to testify before the coroner's jury and then lied about that fact. Plaintiff further argues that the jury's verdict was contrary to the law and the evidence and that defense counsel's trial tactics inflamed the jury and produced a verdict based upon conjecture and prejudice.

This lawsuit arose as the result of an accident that occurred on January 22, 1976. Plaintiff filed this lawsuit against the CTA alleging that the CTA failed to exercise the highest degree of care for its passenger, decedent, as she was alighting from the bus and that the CTA's negligence proximately caused decedent to fall while alighting from the bus, thereby causing severe injury to decedent which resulted in her death. The case was originally tried in 1983. A directed verdict was entered in the CTA's favor. Plaintiff appealed the verdict, and the appellate court reversed and remanded for a new trial. It was retried before a jury in October 1988. The jury entered a verdict in favor of the CTA and judgment was entered thereon. Plaintiff again appeals.

Plaintiff's first witness was Alphonso Henderson (Alphonso), who was with his grandmother, decedent, when the accident occurred and at that time was five years old. His videotaped evidence deposition was shown to the jury. He testified that he and decedent had been shopping and had boarded a CTA bus on their way home. When the bus came to a stop, Alphonso exited the rear door of the bus and decedent followed him. Both Alphonso and decedent were carrying shopping bags. Alphonso testified that as decedent attempted to exit the bus, she had one foot on the ground and one foot on the bus, and as she got ready to put her other foot down, the door of the bus closed on her, catching her coat inside the door. The bus drove away, dragging her, ripping her coat and spinning her to the ground. Decedent struck the pavement and lay there moaning with blood coming from her head. According to Alphonso, a man and a woman whom he did not know arrived at the scene of the accident to help decedent. The bus did not stop. Thereafter, an ambulance arrived and took decedent to a hospital. For several days after the accident, Alphonso refused to speak with police about the accident, claiming that it was "none of their business."

Maxine Trice also testified on behalf of plaintiff. She testified that she had been visiting her aunt, Gloria Montgomery, and Arnold Bell. Montgomery's house was across the street from the site of the accident. Trice crossed the street to go to Bell's car, which was parked at the northwest corner of Marquette and Hamilton. According to Trice, Bell and Montgomery were still in front of the Montgomery house talking. When Trice began to cross from the south side of Marquette to the north side, she observed a CTA bus proceeding west on Marquette Road. As Trice got to the north side of Marquette, she walked west towards Hamilton. Trice saw the bus stop on Marquette, a little west of Hamilton. The location at which the bus stopped was

not a designated bus stop. Trice claims she saw a little boy get off the bus, followed by a woman starting to get off the bus. She testified that as the woman had one foot on the ground and one foot still on the bus, the bus drove away, spinning the woman around until the woman fell to the ground, where her head struck the pavement and began bleeding. Trice went over to the boy and woman, where she was joined by Bell.

Trice admitted that the first time that she had ever told anyone her account of what happened on January 22, 1976, was to plaintiff's counsel in May or June 1988. Thus, she waited over 12 years to tell this story. Trice testified that she had told Montgomery what she had witnessed immediately after the accident. In Trice's deposition, which was taken one or two weeks before the trial, however, she stated that she never told Montgomery that she had witnessed the accident.

Chicago police officer James Carlo's videotaped evidence deposition was also shown to the jury. Officer Carlo testified that on January 22, 1976, he was informed of an accident involving a CTA bus, occurring at 2134 West Marquette at approximately 1 p.m. Officer Carlo investigated the scene of the accident, noting blood in the street three feet seven inches from the north curb and finding the surface of the street dry. Officer Carlo contacted a CTA supervisor, who came to the scene and identified the bus and the driver that had allegedly been involved in the accident.

Chester Ciciura, the CTA bus driver who was allegedly involved in the accident, testified that he remembered a woman and a little boy boarded his bus on the day of the accident. Ciciura recalled that the woman rang the bell for the Hoyne stop, but not in time for him to stop there. Ciciura, therefore, stopped the bus on the next block in front of the viaduct west of Hamilton on Marquette because there was a dry, safe spot for the passengers to alight. Ciciura acknowledged that the curbs were slushy, but that the pavement was dry, which is why he stopped the bus about 4½ feet from the curb. He stopped at this nondesignated location because the next stop after Hoyne was 2½ blocks away and he felt sorry for the lady because she had a small boy with her, bags of groceries in her hands and it was very cold that day. According to Ciciura, the little boy departed from the bus followed by the lady. Ciciura stated that he used the right side rearview mirror to watch the boy and the lady get off the bus. He watched them as the doors closed and saw them start walking east. Ciciura testified that the bus never moved as decedent was alighting from the bus and that he never saw decedent fall. On his return trip, Ciciura was stopped by a police officer, who notified him of the acci-

dent. When Ciciura returned to the CTA garage, he made out a report.

Ciciura further testified that the rear doors of the bus were "push-type" doors which would remain open if a passenger leaned on the door bars. Additionally, he stated that the rear doors were equipped with an interlocking system which prevented the bus from moving while the rear doors were open.

Ciciura initially claimed that his testimony before the jury was the same as his testimony before the coroner's jury at the inquest of decedent's death. Later, Ciciura admitted that he had not told the coroner's jury anything about how the accident happened. He also testified that CTA rules and municipal ordinances, in force at the time, required that bus drivers discharge passengers only at authorized stops. Ciciura admitted that he was not obeying those rules at the time of this alleged accident.

Plaintiff first argues that defense counsel's comment during closing argument, regarding plaintiff's failure to produce Bell, an alleged witness to the accident, at trial was improper. Defense counsel made the following comment: "The only name that was given to the investigating police officer in this case was Mr. Bell, who was never brought in here and whose absence was never explained."

■ Plaintiff failed to make a contemporaneous objection to defense counsel's comment regarding the absence of Bell at trial and first objected to the comment in the post-trial motion. A party cannot sit on his hands and let perceived errors into the record and complain of those errors for the first time in a post-trial motion. (*Daniels v. Standard Oil Realty Corp.* (1986), 145 Ill. App. 3d 363, 369, 495 N.E.2d 1019, 1024, citing *Urman v. Walter* (1981), 101 Ill. App. 3d 1085, 428 N.E.2d 27.) A failure to object to alleged errors in an opponent's closing argument is considered a waiver of the objection. *Kenny Construction Co. v. Hinsdale Sanitary District* (1982), 111 Ill. App. 3d 690, 444 N.E.2d 510.

■ Plaintiff contends that defense counsel's statement was so improper and prejudicial that it deprived plaintiff of a fair trial and, therefore, we may consider the alleged error even though no objection or ruling was made or preserved by plaintiff's counsel. (See *Manninger v. Chicago & Northwestern Transportation Co.* (1978), 64 Ill. App. 3d 719, 381 N.E.2d 383.) In *Manninger*, plaintiff's closing argument suggested that defendant had bribed people and had given witnesses a script to follow while testifying. The court found that statements made by plaintiff's counsel accused defense counsel of subornation of perjury and suppression and distortion of evidence.

(*Manninger*, 64 Ill. App. 3d 719, 381 N.E.2d 383.) In the case at bar, defense counsel merely commented upon the absence of a potential witness. This comment was not so improper or prejudicial as to deprive plaintiff of a fair trial; therefore, we find that plaintiff waived her objection to defense counsel's comment during closing argument regarding plaintiff's failure to produce Bell at trial.

Plaintiff secondly contends that defense counsel's tactics and argument concerning the bus driver's report were improper and prejudicial. During a side-bar conference, plaintiff objected to the anticipated attempt by defendant to offer into evidence the bus driver's report on the basis that it was self-serving and inadmissible. During direct examination of Ciciura, defense counsel was permitted to bring out the fact that Ciciura had made out an accident report on the day of the incident and that the report was used to refresh Ciciura's recollection. During cross-examination, plaintiff's counsel attempted to impeach Ciciura concerning his lack of testimony in front of the coroner's jury. On redirect examination, defense counsel attempted to rehabilitate Ciciura as a witness by offering his report into evidence, which would corroborate his testimony at trial. The trial court sustained plaintiff's counsel's objection.

Ciciura was allowed to testify that the report contained the same information that he had conveyed to the jury. Thus, plaintiff's argument that defense counsel attempted to "create the appearance that plaintiff's counsel was trying to keep something from the jury" is without merit, because Ciciura stated that he had told the jury everything. Further, it was defense counsel who elicited the testimony from Ciciura that the information contained in the report was basically what he had told the jury, thus wiping away any implication that plaintiff was trying to "keep something" from them. Defense counsel's tactics were not so prejudicial that plaintiff was denied a fair trial.

Plaintiff also contends that defense counsel's comment regarding Ciciura's report during closing argument was grossly improper. In closing argument, defense counsel stated that Ciciura had testified that everything he ever told the jury was in his CTA report. Again, plaintiff failed to make a contemporaneous objection to this comment during defense counsel's closing argument. Plaintiff, therefore, has waived review of the comment and alleged error. *Kenny*, 111 Ill. App. 3d 690, 444 N.E.2d 510.

Plaintiff argues further that the trial court erred in permitting defense counsel to read into evidence portions of Officer Carlo's evidence deposition which included hearsay statements allegedly made

to the deponent by a witness who was never called to testify. Portions of Carlo's evidence deposition were offered into evidence during plaintiff's case. During defendant's case, however, defense counsel read certain additional portions of Carlo's deposition into evidence. Plaintiff's counsel objected to defense counsel reading into evidence portions of that transcript which included hearsay statements. Plaintiff specifically objected to statements allegedly made by Montgomery to Carlo regarding Bell as a witness. The record indicates that the fact that Carlo obtained Bell's name from Montgomery was already in evidence. The trial court, thus, permitted this hearsay into evidence. Admission of hearsay evidence is not prejudicial where the evidence is merely cumulative. (*Clifford v. Schaefer* (1969), 105 Ill. App. 2d 233, 245 N.E.2d 49.) The trial court properly allowed the hearsay statements into evidence and plaintiff was not prejudiced by their admission.

■ Plaintiff also contends that defense counsel improperly commented on the hearsay statements during closing argument. Again, plaintiff failed to object to these alleged improper comments at trial and, thus, has waived any error concerning them for purposes of appeal. *Kenny*, 111 Ill. App. 3d 690, 444 N.E.2d 510.

■ Plaintiff argues that the trial court erred in allowing defense counsel to prejudice the all-white jury by suggesting the illegitimacy of decedent's lineal heirs. Plaintiff contends that the trial court granted its motion *in limine* which barred defendant from using any "testimony, remarks, question, answer, inference, innuendo or argument" which might convey to the jury that decedent or any of her lineal next-of-kin were illegitimate. The trial court allowed the jury to hear the following excerpt from Vanessa Henderson's (one of decedent's grandchildren) evidence deposition:

"Q. By Mr. Burke: Reggie was from the same father as you?
A. I don't know too much about the fathers.
Q. Well was Reggie's father the same as your father?
A. I don't know too much about that.
Q. You don't know that.
A. I don't know that.
Q. Okay. And Alphonso, he is your half brother also?
A. No, Alphonso is not.
Q. So—
A. I don't know too much about the fathers.
Q. Does he have the same father as you have?
A. I don't know that.
Q. And Teresa is your half sister?

A. Yes, she is.

Q. So obviously she had a different father, right?

A. Yes, she does."

The motion and order *in limine* are not contained in the record on appeal. This court cannot take cognizance of contentions based on matters outside the record. *In re Annexation of Certain Territory to the City of Darien* (1973), 16 Ill. App. 3d 140, 145, 304 N.E.2d 769, 773.

The record also fails to establish that plaintiff objected during the allegedly improper questioning of Vanessa Henderson. There is no ground for error when no objection is made; thus, plaintiff has waived the assignment of error. (*E & E Hauling, Inc. v. Pollution Control Board* (1985), 107 Ill. 2d 33, 38, 481 N.E.2d 664, 666.) Moreover, the complained-of questioning took place during a videotaped evidence deposition which was taken approximately one month before trial with plaintiff's counsel present. Therefore, if plaintiff found the questioning objectionable, and if it was encompassed within the purported order *in limine*, plaintiff had ample opportunity to bring it to the trial court's attention and request that it be edited out. Plaintiff's objection to this line of questioning was waived. See *E & E Hauling*, 107 Ill. 2d at 38, 481 N.E.2d at 666.

■ Next, plaintiff argues that the trial court erred in allowing the bus driver to give expert testimony regarding a door interlocking system. At trial, Ciciura, the CTA bus driver, testified that the bus was equipped with an interlocking system which prevents the bus from moving while the rear doors are open. Plaintiff characterizes this testimony as expert testimony. Supreme Court Rule 220(a) defines an expert witness as "a person who *** possesses knowledge of a specialized nature beyond that of the average person on a factual matter material to a claim or defense in pending litigation and who may be expected to render an opinion at trial." (107 Ill. 2d R. 220(a).) Ciciura did not render an opinion at trial concerning the interlocking system. Instead, Ciciura merely stated that the bus was equipped with a certain feature, which is similar to what any lay person would testify to concerning features with which his or her vehicle is equipped. Furthermore, the appellate court in the past has allowed a bus driver to testify that the bus he was driving was equipped with an interlocking system which prevented the bus from moving while the rear doors were open. (*Acosta v. Chicago Transit Authority* (1976), 39 Ill. App. 3d 80, 349 N.E.2d 613.) Ciciura's testimony concerning the interlocking system was not expert testimony and was properly admitted.

■■ Additionally, plaintiff contends that no foundation testimony was presented to establish with reasonable certainty that the interlocking system was operational or in proper working order at the time of the occurrence. Plaintiff, however, was able to elicit on cross-examination whether the bus was examined after the accident to check whether the interlocking system was working properly. Thus, the jury heard testimony that the particular bus' system was not checked after the accident, thus remedying any concern for foundation testimony. Moreover, plaintiff's counsel failed to object on the basis of foundation; therefore, plaintiff has waived any such objection for the purposes of appeal. See *Akers v. Atchison, Topeka & Santa Fe Ry. Co.* (1989), 187 Ill. App. 3d 950, 543 N.E.2d 939.

Plaintiff argues that the trial court erred in failing to instruct the jury concerning a violation of an ordinance and in failing to give the jury the full proximate cause instruction. The trial court has discretion in giving instructions and the refusal to give an instruction must create undue prejudice before a new trial is required. *Ferry v. Checker Taxi Co.* (1987), 165 Ill. App. 3d 744, 520 N.E.2d 733.

■■ Plaintiff's instruction number 14 concerns discharging passengers at an unauthorized bus stop in violation of a municipal ordinance. Defendant admits that he stopped the bus at an unauthorized location. Plaintiff cites this court's previous decision in this case that a "violation of the statute or ordinance designed for protection of the public is *prima facie* evidence of negligence, and the plaintiff may recover *if* he shows the violation *is the proximate cause* of the injury. Proximate cause is a factual issue to be decided by the jury \*\*\*." (Emphasis added.) (*Pharr v. Chicago Transit Authority* (1984), 123 Ill. App. 3d 205, 209, 462 N.E.2d 753, 756.) This quote is legally correct. Plaintiff, however, fails to recognize that its own witnesses claim that the bus' rear doors closed on decedent's coat and that the bus moved before decedent was able to completely exit from the bus, thus causing her to fall and sustain her fatal injury. No evidence was introduced from which the jury could reasonably infer that decedent slipped and fell due to weather conditions or that stopping the bus at the unauthorized location had anything to do with decedent's death. In fact, testimony at trial from Officer Carlo and Ciciura indicated that Ciciura stopped at a dry place which provided a safe haven for decedent and her grandson to exit the bus. Instructions are to be given only when there is evidence which supports the theory of the instruction; if there are no facts in the record which support the theory, giving an instruction on the theory is reversible error. (*Jensen v. Chicago & Western Indiana R.R. Co.* (1981), 94 Ill. App. 3d 915, 419

N.E.2d 578.) Since there was no evidence from which a reasonable jury could infer that stopping at the unauthorized site proximately caused decedent's injury and subsequent death, the trial court properly refused to give plaintiff's instruction number 14 to the jury.

■■ The trial court refused to give to the jury plaintiff's instruction number 9, which was the long version of the proximate cause instruction. (Illinois Pattern Jury Instruction, Civil, No. 15.01 (2d ed. 1971) (hereinafter IPI Civil 2d).) According to the comments accompanying IPI Civil 2d No. 15.01, the instruction should be given in its entirety when there is evidence of a concurring or contributing cause other than the negligence of the defendants. The first sentence of the instruction is to be used only when the conduct of the plaintiff and defendant is in issue. Plaintiff misinterprets the IPI comments. Plaintiff has failed to indicate what the other contributing factor(s) might have been. We agree with defendant that, even assuming there was negligence, the form of negligence, whether it was discharging passengers at an unauthorized stop which contained unsafe conditions or by pulling away before decedent was fully off the bus or both, would not affect the manner in which the instruction was given because both these theories concern the bus driver's negligence and do not concern other contributing causes. Further, plaintiff's argument that weather conditions constitute a contributing cause is without merit, because we have found that there was no evidence to support the theory that decedent fell due to weather conditions. The trial court properly refused plaintiff's instruction number 9 and gave the jury the short form of the proximate cause instruction, which was submitted by defendant.

■■ Plaintiff contends that the trial court erred in precluding plaintiff's argument concerning the alleged reasonable inferences to be drawn from the fact that the bus driver had been instructed not to testify before the coroner's jury and then allegedly lied about that fact. This argument is totally without merit, because, in fact, plaintiff's counsel argued the alleged reasonable inference that the bus driver had been instructed not to testify before the coroner's jury and then allegedly lied about it. Plaintiff's counsel during rebuttal argument commented:

> "Now, if you believe that, then I'm the Tooth Fairy. This is from the same man who sat there on the witness stand under oath and told you, 'Sure I told the coroner's jury the same thing that I told this jury.' You remember that? He had the whole lunch hour to think about it. And sure, that is what I told the coroner's jury. How long did it take him before he fi-

nally admitted that he never told the coroner's jury—he never told them anything, because the CTA lawyer advised him not to."

Clearly, plaintiff was allowed to argue the inference to the jury that it now claims the trial court would not allow. Therefore, we find that this issue is without merit.

■ Lastly, plaintiff contends that defense counsel's trial tactics inflamed the jury and produced a verdict based upon conjecture and prejudice and that the jury's verdict was contrary to the law and the evidence. A jury verdict will not be overturned unless it is against the manifest weight of the evidence. (*Ford v. City of Chicago* (1985), 132 Ill. App. 3d 408, 412, 476 N.E.2d 1232, 1236.) A verdict is considered to be against the manifest weight of the evidence only when the opposite conclusion is clearly apparent or when the finding of the jury appears arbitrary or unsubstantiated by the evidence. (*United States Department of Housing & Urban Development v. Anderson* (1988), 178 Ill. App. 3d 752, 754, 533 N.E.2d 919, 920.) A reviewing court should not disturb the jury's verdict unless, considering all of the evidence in the light most favorable to the party that prevailed at trial, the jury's conclusion is palpably erroneous and wholly unwarranted. *Anderson*, 178 Ill. App. 3d at 754, 533 N.E.2d at 920-21.

CTA bus driver Ciciura testified that he stopped the bus near the viaduct on Marquette even though it was not an authorized stop. Ciciura stated that the place he stopped had a dry, safe place to which passengers could alight. Ciciura watched decedent and Alphonso in his rearview mirror as they exited the bus through the rear doors. Ciciura testified that the bus did not move while the passengers were exiting and that the rear doors closed. Additionally, Ciciura testified that the rear doors of the bus were equipped with an interlocking system which prevented the bus from moving while the doors were still open. Ciciura claims to have watched the rear doors close and seen decedent and Alphonso walking east.

Alphonso, who was five years old at the time of decedent's accident, testified that, as decedent was alighting from the bus, the rear doors closed on her coat, she was dragged and spun to the ground. Trice, who admitted that the first time that she ever told anyone about her witnessing the accident was 12 years after it had happened, testified that decedent was in the process of alighting from the bus when the bus pulled away. Decedent then spun around and fell to the ground.

■ It is within the jury's province to resolve conflicts in the evidence, and as long as the jury's resolution is supported by credible ev-

idence, then a reviewing court should not substitute its judgment for that of the jury. (*Seward v. Griffin* (1983), 116 Ill. App. 3d 749, 760, 452 N.E.2d 558, 567.) Further, it is the function of the trier of fact to determine the credibility of the witnesses and the inferences to be drawn from their testimony. (*Harris v. Day* (1983), 115 Ill. App. 3d 762, 769, 451 N.E.2d 262.) The jury was entitled to believe Ciciura's account of what transpired the day of the accident. We find that the jury's verdict is not against the manifest weight of the evidence and is not contrary to the law.

Additionally, as discussed throughout our opinion, defense counsel's comments and tactics were either not improper or not prejudicial. Thus, we find that defense counsel's tactics did not inflame the jury so as to produce a verdict based upon conjecture and prejudice.

For the foregoing reasons, the judgment of the circuit court of Cook County will be affirmed.

Affirmed.

MANNING, P.J., and CAMPBELL, J., concur.