ROSE D. LEONARDI, Adm'r of the Estate of Michela Lopez, Deceased, *et al.*, Plaintiffs-Appellants, v. LOYOLA UNIVERSITY OF CHICAGO *et al.*, Defendants-Appellees.

First District (4th Division)   No. 1—90—2629

Opinion filed December 30, 1993.—Rehearing denied May 6, 1994.

Power, Rogers & Lavin, of Chicago (Terrence J. Lavin and David A. Novoselsky, of counsel), for appellants.

Baker & McKenzie, of Chicago (Francis D. Morrissey, Thomas F. Tobin, Michael A. Pollard, John A. Krivicich, and Michael T. Pfau, of counsel), for appellee Loyola University of Chicago.

Cassiday, Schade & Gloor, of Chicago (Michael J. Morrissey, Lynn D. Dowd, and Michael M. Tannen, of counsel), for other appellees.

JUSTICE JOHNSON delivered the opinion of the court:

Plaintiffs brought this medical malpractice action against defendants in the circuit court of Cook County. Following trial, the trial court entered judgment on the verdict which the jury returned in favor of defendants. Plaintiffs appeal, claiming (1) the trial court erred in allowing defendants to present evidence of conduct committed by an individual not a party at trial; (2) the trial court improperly tendered to the jury an instruction on sole proximate cause; (3) the trial court erred in permitting defendants to improperly cross-examine plaintiffs' medical experts; and (4) the jury's verdict was against the manifest weight of the evidence.

We affirm.

On September 1, 1979, 36-year-old Michela Lopez was admitted to Foster G. McGaw Hospital at Loyola University Medical Center at the request of her attending physician, Dr. Thomas Tierney. Upon admission, Mrs. Lopez was in stable condition and was examined by Dr. Roberta Karlman, who determined that she was approximately seven months pregnant. Mrs. Lopez was considered a high risk obstetrical patient given the gestational age of the fetus, and because her water bag had ruptured prematurely.

Later that evening, a hospital nurse noticed heavy bleeding from Mrs. Lopez's vagina, and paged a doctor. Dr. Joseph Coughlin, a resident, responded to the page and determined that Mrs. Lopez was hemorrhaging. Dr. John Gallagher, a senior resident who arrived moments after Dr. Coughlin, had Mrs. Lopez transferred to the labor room at 9:35 p.m. There, Mrs. Lopez went into hypovolemic shock after losing additional amounts of blood. Mrs. Lopez was given intravenous fluids and her condition was stabilized.

Meanwhile, Dr. Tierney was not present at the hospital when Mrs. Lopez was admitted, but instructed hospital staff by telephone not to perform a Cesarean section until he arrived. Dr. Tierney also ordered Dr. Gallagher to perform a vaginal inspection, the results of which confirmed the existence of a placenta previa, an abnormal positioning of the placenta in the uterus. Later, when Dr. Tierney arrived at the hospital, he performed a Cesarean section on Mrs. Lopez. At 9:58 p.m., Mrs. Lopez gave birth to a two-pound baby girl.

Thereafter, Dr. Tierney attempted to remove the placenta and massive bleeding occurred. During removal of the placenta, Dr. Tierney discovered a placenta accreta, an abnormal adherence of the placenta to the uterine wall. He performed a hysterectomy which was medically required due to the placenta previa. Following the surgery, Mrs. Lopez's blood pressure and pulse were both stable, and her urine output was satisfactory. Mrs. Lopez was then transferred to the recovery room, where she was given supplemental oxygen. Mrs. Lopez was in critical, but stable condition.

On September 4, 1979, at 6 a.m, Dr. Karlman ordered that Mrs. Lopez's oxygen be removed and that her arterial blood gases be assessed half an hour later. A blood gas assessment is used to evaluate the gas exchange in a patient's lungs and the acid in his or her blood. Up until this time, Mrs. Lopez exhibited no signs of pulmonary embolus, a condition which occurs when a person develops a blood clot which can impede proper blood flow.

Later that morning, at approximately 9:30 a.m., Mrs. Lopez was restless and complained of abdominal pain. These symptoms were consistent with a patient having recently undergone a large abdominal procedure and experienced massive blood loss. At 10:30 a.m., a blood test revealed that Mrs. Lopez was experiencing respiratory difficulties. Mrs. Lopez was given supplemental oxygen and her blood pressure registered normal.

At approximately 11 a.m., Mrs. Lopez's blood pressure dropped significantly and she then was examined by Drs. John Gianopoulos and John Payne. At 11:35 a.m., Mrs. Lopez suffered a respiratory arrest. The doctors believed Mrs. Lopez was also suffering a pulmonary embolus, for which an embolectomy was the proper treatment. Minutes later, Mrs. Lopez was taken to the operating room where Dr. Roque Pifarre performed a pulmonary embolectomy. This procedure entailed breaking Mrs. Lopez's sternum and massaging the blood clot which lodged near the beginning of the pulmonary artery and impeded blood flow to the arteries. Mrs. Lopez suffered irreversible brain damage and lived in a nursing home until her death on January 25, 1985.

On July 25, 1989, plaintiffs filed a fourth amended complaint against several defendants, including Dr. Tierney and the named defendants, alleging they were negligent in their care and treatment of Mrs. Lopez. Plaintiffs further alleged that defendants' negligence was the proximate cause of Mrs. Lopez's death. Prior to trial, Dr. Tierney passed away and was later dismissed from the lawsuit after his estate settled with the plaintiffs. After trial, the jury returned its verdict in favor of defendants.

■ On appeal, plaintiffs initially challenge the trial court's rulings with respect to the admission of evidence concerning Dr. Tierney. Prior to trial, the trial court denied plaintiffs' motion *in limine* to bar introduction of evidence regarding the negligence of any person other than the named defendants. At trial, defendants presented evidence of Dr. Tierney's conduct, and also questioned other doctors about his duties and responsibilities as Mrs. Lopez's attending physician. Plaintiffs contend that this evidence was irrelevant, and also that the trial court improperly declined to strike defendants' hypothetical question regarding Dr. Tierney's conduct.

Both parties acknowledge that relevant evidence is that which tends to prove a fact in issue more or less probable. (*Marut v. Costello* (1966), 34 Ill. 2d 125, 128.) Whether evidence is relevant is a question which rests within the discretion of the trial court, whose decision should remain undisturbed unless an abuse of discretion has been shown. (*O'Brien v. Hertl* (1992), 238 Ill. App. 3d 217, 223.) In the present case, we are unpersuaded that the trial court abused its discretion.

It is undisputed that Dr. Tierney was Mrs. Lopez's attending physician and, as such, was primarily responsible for her care. The evidence demonstrated that Dr. Tierney was intricately involved in the care and treatment Mrs. Lopez received. He instructed hospital staff not to operate on her until he arrived. Once there, Dr. Tierney performed the surgery and gave follow-up instructions for Mrs. Lopez's care.

Moreover, Dr. Tierney visited with Mrs. Lopez at least twice on September 4, 1979. Both plaintiffs' and defendants' experts testified at trial that Dr. Tierney was responsible for ensuring that all proper medical procedures had been performed. At the very least, his conduct was relevant to establish the treatment and care Mrs. Lopez received. Given this, we find no abuse of discretion. Plaintiffs inappropriately cite to *Lipke v. Celotex Corp.* (1987), 153 Ill. App. 3d 498, where the court held that evidence of a nonparty's concurrent negligence does not absolve a defendant from liability for his own negligence. (*Lipke*, 153 Ill. App. 3d at 509.) However, this principle as espoused in *Lipke* was premised on the fact that the evidence sufficiently supported a finding that the defendant was guilty of negligence. (See *Watson v. Chicago Transit Authority* (1973), 12 Ill. App. 3d 684, 692.) In the case at bar, however, no evidence supported a finding defendants were negligent. In fact, the trial court stated, during a sidebar, "I don't know how anyone can say at this juncture given the facts of this case that it could not all be laid off on Dr. Tierney." We hold that evidence of Dr. Tierney's conduct was relevant

and perceive no error in the trial court's ruling on plaintiffs' motion *in limine*. Consequently, the trial court properly permitted defendant to question other doctors concerning Dr. Tierney's duties and responsibilities.

■ Similarly, we reject plaintiffs' argument that the trial court erred in failing to strike the following hypothetical question posed by defendants to Dr. Balasaraswathi:

"If Dr. Tierney was notified, and an obstetrical resident was there and wanted to draw a blood gas, and Dr. Tierney countermanded the order and told the obstetrical resident that she could not, it would be Dr. Tierney causing that blood gas not to be drawn, is that right?"

Undoubtedly, a litigant may pose a hypothetical question to an expert witness given that the question is based on facts in evidence or on reasonable inferences therefrom. (*Benison v. Silverman* (1992), 233 Ill. App. 3d 689, 704.) The trial court determines whether a hypothetical question has sufficient basis in the evidence. (*Myers v. Williams* (1987), 160 Ill. App. 3d 707, 712.) The assumptions contained in the hypothetical question may be based on real or circumstantial evidence, supported by the facts or reasonable inferences therefrom. (*Buford v. Chicago Housing Authority* (1985), 131 Ill. App. 3d 235, 245.) Also, a trial court may allow a litigant to pose a hypothetical question based upon counsel's representation that opinion testimony will be supported by forthcoming evidence. *Myers*, 160 Ill. App. 3d at 712-13.

In the present case, the trial court permitted counsel for defendants to pose the hypothetical question based on a promise that it would be supported by the impending testimony. Plaintiffs contend that defendants failed to "tie up" the hypothetical question as promised and claim it should have been stricken. At trial, however, Dr. Balasaraswathi testified that medical records indicated that Dr. Tierney was the one who deviated from the standard of care by preventing a blood gas being drawn on Mrs. Lopez after he visited her room on September 4, 1979. Likewise, Dr. Hau Kwaan testified that Dr. Tierney, as the physician in charge of Mrs. Lopez on September 4, 1979, was responsible for ensuring that proper medical procedures were followed. We believe the hypothetical question had sufficient support in the evidence. Consequently, the trial court did not err in failing to strike the hypothetical question.

■ Next, plaintiffs contend that the trial court improperly tendered to the jury Illinois Pattern Jury Instructions, Civil, No. 12.04 (3d ed. 1992) (hereinafter cited as IPI Civil 3d No. 12.04). Plaintiffs argue that no evidence supported the giving of that

instruction. Citing *Bargman v. Economics Laboratory, Inc.* (1989), 181 Ill. App. 3d 1023, plaintiffs further posit that because defendants failed to plead that Dr. Tierney was the sole proximate cause of Mrs. Lopez's injuries, IPI Civil 3d No. 12.04 was given in error.

It is the trial court which determines what instruction should be tendered to the jury, and its decision will remain undisturbed absent an abuse of discretion. (*Lundquist v. Nickels* (1992), 238 Ill. App. 3d 410, 431.) An instruction is deemed to have been properly tendered to the jury where it is supported by some evidence in the record. *Yates v. Chicago National League Ball Club, Inc.* (1992), 230 Ill. App. 3d 472, 487.

We believe IPI Civil 3d No. 12.04 was properly tendered to the jury. The "Notes on Use" following IPI Civil 3d No. 12.04 suggest that the instruction is properly used in cases where the conduct of a nonparty may have contributed to the injury in question. (IPI Civil 3d No. 12.04, Notes on Use; *Perry v. Chicago & North Western Transportation Co.* (1977), 54 Ill. App. 3d 82, 89-90.) The notes also suggest that the entire instruction, which was given to the jury in the present case, could be used where some evidence demonstrates that the conduct of a third party was the sole proximate cause of the injury in question. In the case at bar, the trial court opined that, given the evidence, all blame could have been placed on Dr. Tierney. Hence, IPI Civil 3d No. 12.04 was properly tendered to the jury.

Plaintiffs' reliance on *Bargman* is misplaced. The issue in *Bargman* concerned Illinois Pattern Jury Instructions, Civil No. 20.01 (2d ed. 1981) (hereinafter cited as IPI Civil 2d No. 20.01). The "Notes on Use" following IPI Civil 2d No. 20.01 require the litigant to have pleaded sole proximate cause in order to have the jury so instructed. However, no such requirement exists in IPI Civil 3d No. 12.04, and, therefore, *Bargman* is inapposite.

■ Plaintiffs' third allegation of error concerns defendants' questioning of plaintiffs' experts, Dr. Hau Kwann and Dr. Ronald Wender. Plaintiffs assert that the trial court improperly allowed defendant to cross-examine Dr. Kwann regarding opinions expressed in Dr. Wender's deposition. Plaintiffs further argue that the trial court erroneously permitted defendants to cross-examine Dr. Wender on the issue of proximate cause when he was retained solely on the issue of negligence. According to plaintiffs, defendants' questioning was outside the scope of direct examination and also violated Supreme Court Rule 220 (107 Ill. 2d R. 220).

The proper scope of cross-examination is determined by the trial court, whose decision will not be disturbed unless the trial court abused its discretion. (*People v. Guyon* (1983), 117 Ill. App. 3d 522,

532-33.) In *Piano v. Davison* (1987), 157 Ill. App. 3d 649, this court held that a trial court may properly permit cross-examination of an expert concerning reports or depositions of other witnesses, which the expert has read. (*Davison*, 157 Ill. App. 3d at 672.) In the present case, Dr. Kwann testified he had read Dr. Wender's deposition. Consequently, the trial court did not abuse its discretion in allowing defendants to question Dr. Kwann concerning Dr. Wender's deposition.

■ Likewise, we agree with defendants that the trial court did not abuse its discretion in allowing defendants to cross-examine Dr. Wender regarding proximate cause. While the scope of cross-examination is generally limited to a witness' testimony on direct, a litigant may properly develop on cross-examination circumstances lying within the witness' knowledge, which explain, discredit or destroy the witness' testimony on direct. (*People v. Franklin* (1990), 135 Ill. 2d 78, 97.) Such is the case even though the information may not have been given on direct examination. *Franklin*, 135 Ill. 2d at 97.

In the case at bar, plaintiffs questioned Dr. Wender on direct examination concerning deviations from the standard of care by defendants. Dr. Wender opined that defendants had deviated from the standard of care. On cross-examination, defendants inquired whether the deviations cited by Dr. Wender proximately caused Mrs. Lopez's injuries, a necessary element to be proved in every medical malpractice action. (*Ramos v. Pyati* (1989), 179 Ill. App. 3d 214, 220-21.) We believe that defendants were entitled to develop Dr. Wender's testimony on direct that defendant had violated the standard of care. Consequently, we find no abuse of discretion.

■ Furthermore, we cannot agree with plaintiffs that defendants' questioning of Dr. Wender on proximate cause violated Supreme Court Rule 220. (107 Ill. 2d R. 220.) Rule 220 limits an expert's testimony on both direct and cross-examination to his or her opinions expressed in discovery. (See *Mid-America Bank & Trust Co. v. Commercial Union Insurance Co.* (1992), 224 Ill. App. 3d 1083.) Rule 220 also provides that an expert "shall not be prevented from testifying as to facts or opinions on matters regarding which inquiry was not made in the discovery proceedings." (107 Ill. 2d R. 220(d).) Here, Dr. Wender was not asked about proximate cause during discovery and, therefore, his testimony in that regard did not violate Rule 220. See *Delzell v. Moore* (1992), 224 Ill. App. 3d 808; *Crawford County State Bank v. Grady* (1987), 161 Ill. App. 3d 332.

■ Lastly, plaintiffs urge this court to grant a new trial arguing that the verdict was against the manifest weight of the evidence. Citing the errors raised on appeal, plaintiffs contend that the jury

"was deprived at the outset of the ability to base its decision upon the evidence presented at trial."

A court of review will not disturb a jury verdict unless the verdict was against the manifest weight of the evidence. (*Kim v. Evanston Hospital* (1992), 240 Ill. App. 3d 881, 893.) A verdict is against the manifest weight of the evidence where a contrary verdict is clearly evident based on the evidence. (*Tedrowe v. Burlington Northern, Inc.* (1987), 158 Ill. App. 3d 438, 444.) After considering the evidence presented at trial, we cannot conclude that a contrary verdict was clearly evident. Therefore, we hold that the jury's verdict was not against the manifest weight of the evidence.

For the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.

CAHILL, P.J., and THEIS, J., concur.