657 N.E.2d 657 (1995)
275 Ill.App.3d 1058
212 Ill.Dec. 456
Gladys DIAZ, Indiv. and as Special Adm'r of the Estate of Natalie Diaz, a Minor, Deceased, Plaintiff-Appellant,
v.
Ward KELLEY, Arlington Trucking Company, D & J Trucking, Inc., ATC Trucking, Inc. and W.V. Graham, Defendants-Appellees.
No. 1-94-1628.
Appellate Court of Illinois, First District, Fifth Division.
September 8, 1995.
As Modified on Denial of Rehearing November 9, 1995.
*660 Power Rogers & Smith P.C., Chicago (Joseph A. Power, Jr., Larry R. Rogers, Jr. and David A. Novoselski, of counsel) for appellant.
O'Connor, Schiff & Myers, Chicago (Kevin F. Donohue, Patrick D. Riley and Loretta M. Griffin, of counsel) for appellees.

*661 MODIFIED ON DENIAL OF REHEARING
Justice McNULTY delivered the opinion of the court:
Plaintiff Gladys Diaz, on behalf of the estate of her daughter Natalie Diaz, brought suit against truck driver Ward Kelley and ATC Trucking Company. The jury found in favor of defendants and plaintiff appeals, contending that: (1) the trial court erred in failing to grant a new trial after learning that the jury foreperson had concealed his criminal background and his involvement in two civil lawsuits; (2) defense counsel made improper comments in opening statement; (3) the trial court erred in preventing plaintiff from questioning defendant about his violation of the Chicago Municipal Code; (4) the trial court improperly restricted plaintiff's cross-examination of a defense witness; (5) the trial court improperly instructed the jury; (6) defense counsel made improper comments in closing argument; (7) the trial court erred in denying plaintiff's motion for a directed verdict; and (8) the jury verdict was against the manifest weight of the evidence. We affirm.
Norma Moreno testified that on January 11, 1989, she was babysitting her granddaughter, Natalie, and her grandson, Perfy. At approximately 1:15 p.m., Norma, her husband, Morito, and their grandchildren left their house and headed south on California Avenue toward Fullerton in Chicago, Illinois. Morito took Perfy and went to his car to get Perfy's stroller, while Norma and Natalie waited at the north side of Fullerton and California. Norma and Natalie then crossed at the intersection from the north side to the south side of Fullerton. After they arrived at the southwest corner, they attempted to cross to the east side of California. Norma saw the "walking man," looked to the left, and noticed traffic going east. Natalie was at her left. Norma testified that she held Natalie's hand and they stepped off the curb. The next minute, something pulled Natalie out of Norma's hand, and they were both hit by the back wheels of a truck.
Norma testified that she did not see the truck until she stepped into the street. Norma admitted that, at her deposition, she had testified that she never stepped off the curb with Natalie and that she and Natalie were both standing on the curb when she felt Natalie get pulled. At trial, Norma testified that the truck never came up onto the curb. Norma testified that when she felt the pull from her granddaughter, the front wheels of the trailer had already passed in front of her. Natalie was four or five feet into the intersection when she was hit by the truck.
Morito Moreno testified that he crossed from the north to the south side of Fullerton at the intersection of Fullerton and California. His wife and Natalie waited for him at the intersection of Fullerton and California. When the "walking man" came on, Morito, Norma, Natalie and Perfy crossed from the north side to the south side of the street. Morito hurried ahead because he knew he would have trouble lifting the stroller onto the curb. As he was straightening the stroller wheels on the curb, he heard his wife scream. He turned and saw his wife trying to pick herself up and pull Natalie up at the same time. Morito then saw the wheel of the truck hit part of Natalie's head. Morito did not see the truck as he was crossing the street.
Diana Mendoza testified that she was getting ready to cross the street at about 1 p.m. on January 11, 1989, when she saw a little girl and her grandmother at the southwest corner, getting ready to cross the street toward her. The grandmother was holding the child's hand. She saw the grandmother and the child take one step into the crosswalk. The pedestrian light was green and Mendoza began to cross the street but was forced to stop in the middle of the street because a truck was coming eastbound at her. The truck was making a right turn on to California. When the truck made its turn, Mendoza saw the little girl fall and the front rear tire hit the girl. Mendoza estimated that the truck was traveling about 10 miles an hour.
Defendant Ward Kelley testified that when he approached the light at Fullerton and California, it was red and he stopped his truck in the innermost lane of the eastbound Fullerton lanes. While he was stopped, he was aware of people crossing from the north-west *662 to the southwest corner, but he only saw the tops of their heads as they passed in front of his truck. The flow of traffic north and south on California prevented him from turning right on the red light at that intersection. When the light turned green, Kelley looked to see if there were any pedestrians in the crosswalk. He saw pedestrians on the southeast and southwest corners. He did not see any small children and there was nothing obstructing his vision. Prior to making his right hand-turn to go south on California, Kelley did not sound his horn. In order to get enough clearance to make the right-hand turn, the front part of the truck had to cross the yellow lines and enter the left turning lane on the northbound side of California. Kelley testified that he could not have made the right-hand turn while keeping the front part of the truck totally within the southbound lanes of California. As he made the turn, he never noticed the grandparents, a child in a stroller or a little girl. Before he completed his right turn, he saw a woman at the right rear of his tires. He never saw Natalie until he stopped and exited the truck and saw her lying on the street. He did not decrease his speed until he saw the woman at his right rear tires.
Leonide Rios testified that at the time of the accident he was facing the east side of Fullerton as he waited to cross Fullerton. He noticed a tractor trailer turning south on California at about three to five miles an hour. At the same time he noticed a little girl walking off the sidewalk and into the street at a slow to normal pace. Rios did not see anybody with the girl when she walked onto the street and was hit by the last two tires of the truck. The little girl was not holding anybody's hand. When Rios saw the child walk into the street, he signaled the truck driver to stop and the driver stopped right away, moving 10 or 12 inches after the impact. Rios estimated that the little girl was six to seven feet from the sidewalk into the street when she was hit by the truck.
Robert Greenwald, a truck driver, testified that he was walking east on Fullerton near California when he saw a semi-truck at the intersection of California and Fullerton. Greenwald explained that when making a turn, the trailer follows the cab and sometimes the cab goes into the left-turn lane to get enough space to clear the curb. The truck he saw did clear the curb. He said that the truck did not get up over a crawl, meaning that it was barely moving. As the truck was turning, Greenwald heard a woman scream and saw the little girl's body lying in between the tandems of the trailer. After Greenwald heard the screams, the truck stopped.
Plaintiff first contends on appeal that she should have been granted a new trial because the jury foreperson, Lawrence Sims, concealed during voir dire the fact that he had a prior criminal history and had been named a defendant in two civil lawsuits, one of which plaintiff claims was currently pending in the circuit court of Cook County.
A motion for a new trial based on a juror's false testimony during voir dire should be denied unless the movant establishes both that the juror answered falsely and that prejudice resulted. (Pekelder v. Edgewater Automotive Co. (1977), 68 Ill.2d 136, 11 Ill.Dec. 292, 368 N.E.2d 900.) The issue is primarily left to the discretion of the trial court, which is in the best position to observe the juror and his demeanor. Pekelder, 68 Ill.2d at 139, 11 Ill.Dec. 292, 368 N.E.2d 900.
After the trial was completed, plaintiff's attorney discovered that Sims, who was 28 years old at the time of trial, as a teenager had pled guilty to a charge of possession of a stolen vehicle and had been charged with aggravated assault. On his juror information card, Sims stated that he had not been an accused, a complainant or a witness in a criminal case. Despite Sims' misrepresentation, we see no reason why Sims' criminal activity as a teenager would have been prejudicial to plaintiff's civil case tried 10 years after Sims' criminal involvement.
Plaintiff's attorney also discovered after trial that two collection actions for medical bills had been brought against Sims. On his juror information card, however, Sims had stated that he had never been a party to any lawsuit. Plaintiff claims that at least one of these actions was pending at the time of trial.
*663 However, it appears that these actions were finally adjudicated in 1991 and 1992. Regardless, we do not see how a dispute with a medical provider would prejudice Sims against plaintiff.
Plaintiff claims that Sims' prejudice against plaintiff's case was evident from his "facial expressions and mannerism of disbelief" during the testimony of Natalie's sister. Plaintiff claims that Sims' bias toward the defense was evident when Sims suggested that the court provide a glass of water for a defense witness who had a throat condition.
The trial court was in the best position to observe Sims' behavior and determine whether he exhibited any prejudice against plaintiff or bias toward the defendant. We see no reason to disturb the trial court's finding that Sims exhibited no prejudice against or bias toward either party.
Plaintiff also claims that, after the trial, she discovered that Sims' father had driven a truck at some point in his life. Plaintiff claims that if she had discovered this during voir dire she would never have permitted Sims to sit on the jury. The record reveals, however, that plaintiff never even questioned Sims during voir dire as to whether anyone in his family drove a truck. Furthermore, it is unlikely that plaintiff would have excluded Sims from the jury because his father once worked as a truck driver, since plaintiff accepted another juror whose husband drove a truck for a living.
While plaintiff suggests that Sims' position as the jury foreperson may have caused him to have a disproportionate influence on his fellow jurors, there is no evidence that Sims had any prejudice against plaintiff or that he used his influence to sway the jurors to find in defendants' favor.
Plaintiff next claims that she was denied a fair trial by defense counsel's opening statement, which was argumentative and unsupported by the evidence. Plaintiff first claims that defense counsel improperly commented, without any evidence, that Natalie darted into the street, alone and unsupervised and found herself in the path of the truck.
In opening argument, defense counsel stated that Leonide Rios would testify that Natalie's grandmother was nowhere near the child and "that quickly, in the flash of a second, the child was out in the street." Defense counsel also stated that Robert Greenwald would testify that the child got away from the grandmother, and "[i]n that split second, the little child's [sic] out in the street and running or walking into the side of the vehicle."
Both Greenwald and Rios testified that they did not see the grandmother with Natalie and soon thereafter, Natalie was in the street and hit by the truck. This testimony, combined with the parties' stipulation that a child Natalie's age can travel between 2.5 feet and 4.3 feet in one second and the evidence that Natalie was four feet into the intersection at the time of the accident, supports defense counsel's argument that Natalie entered the street in a split second.
Plaintiff next claims that there was no evidence to support defense counsel's comment in opening statement that, due to the size of the truck, in order to make a righthand turn, it was necessary for defendant Kelley to cross into the left-hand turn lane. This statement was entirely consistent with the testimony of defendant Kelley and Greenwald that, because of the size of the truck, the only way to make the turn without driving up onto the sidewalk was to cross into the left-hand turn lane.
Plaintiff next complains that defense counsel attempted to undermine the credibility of plaintiff and plaintiff's counsel when he stated that two weeks before trial, plaintiff's investigator "went looking for" Diana Mendoza and found new witnesses. Because the trial court sustained plaintiff's objection to this comment, any potential error was cured. Van Steemburg v. General Aviation, Inc. (1993), 243 Ill.App.3d 299, 183 Ill.Dec. 496, 611 N.E.2d 1144.
Plaintiff further claims that defense counsel made comments in opening argument suggesting that plaintiff must know witnesses Miguel Loiz and Diana Mendoza purely because of their common Hispanic descent, and that Dianna Mendoza must be a social *664 friend of Margie Rivera because all Hispanics are social friends. We have reviewed defense counsel's opening statement and do not find that he made such suggestions regarding Hispanics.
Plaintiff also complains that defense counsel's opening statement ran 15 minutes over the time allotted by the trial court. The record reveals that once plaintiff objected to the length of defense counsel's opening argument, the trial court told defense counsel to "shorten it up." Defense counsel then quickly finished his opening statement. We do not see how the length of the statement unduly prejudiced plaintiff. We therefore find no merit to any of plaintiff's assertions of prejudice due to defense counsel's opening statement.
Plaintiff next claims that the trial court erred in prohibiting plaintiff from questioning defendant regarding his violation of the section of the Chicago Municipal Code which requires a driver to sound his horn prior to making a right turn which might potentially injure pedestrians. (Chicago Municipal Code § 27-261(a) (1984).) When plaintiff's counsel attempted to question defendant regarding whether he was required by statute or ordinance to sound his horn, defense counsel objected, and the court sustained the objection. Defendant's knowledge as to whether there was such a statute or ordinance in effect at the relevant time has no bearing on whether there was in fact such a statute or ordinance in effect. The objection to this question was properly sustained.
Plaintiff next claims that the trial court improperly restricted plaintiff's cross-examination of defense witness Leonide Rios. Plaintiff first claims that the trial court improperly permitted Rios to express an opinion on an ultimate issue of the case when he stated that the incident happened so fast that there was no time to stop the truck. Defense counsel asked Rios what portion of the truck came in contact with Natalie. Rios indicated what section of the truck and then stated "and then it was something so fast, like she don't, nobody has time to stop their truck." Plaintiff objected and moved to strike this testimony, but the trial court overruled the objection.
In order for a lay witness to be permitted to express an opinion on an ultimate issue, it must be evident that the witness cannot adequately communicate to the jury the facts upon which his opinion is based. Freeding-Skokie Roll-Off Service, Inc. v. Hamilton (1985), 108 Ill.2d 217, 91 Ill.Dec. 178, 483 N.E.2d 524; Strasma v. Rager (1986), 145 Ill.App.3d 826, 99 Ill.Dec. 608, 495 N.E.2d 1343 (It is improper for a lay witness in a case involving whether the defendant is negligent to state that the accident was unavoidable when the witness could have adequately communicated to the jury the facts upon which his opinion was based).
Rios' comment that defendant had no time to stop his truck did improperly express an opinion on the ultimate issue of defendant's negligence. We recognize that Rios was not fluent in English and had some difficulty understanding questions and explaining his answers. Rios was, however, able to communicate the facts on which his opinion was based. While plaintiff's objection to Rios' statement should have been sustained, Rios' comment was so disjointed, we do not believe that it unduly prejudiced plaintiff's case.
Plaintiff next claims that the trial court improperly prevented plaintiff's counsel from questioning Rios on his statement at trial that he was the pastor of a church. When Rios gave a statement to the police at the scene of the accident, he indicated that he was unemployed and on welfare. At trial, Rios testified that he was unemployed and for the past 10 years has been a pastor of a church operated out of his home. Plaintiff sought to impeach Rios with the fact that he had previously said he was unemployed and later testified that he was a pastor in a church. We find no significant discrepancies between Rios' two statements, however, since Rios consistently stated that he was unemployed. Therefore, the trial court properly prevented further inquiry on this issue.
Plaintiff further claims that he was improperly prevented from impeaching Rios on his refusal to testify at trial under oath. At trial, Rios refused to swear under oath, *665 indicating that he did not swear or take oaths. Plaintiff attempted to impeach Rios by showing that he had taken an oath at his deposition. The trial court permitted plaintiff to question Rios outside of the presence of the jury regarding whether he had taken an oath at his deposition. Rios testified that he has never taken an oath. The trial court prevented plaintiff from pursuing this line of questioning in the presence of the jury, noting that because this witness did not speak English very well and had difficulty understanding questions, he may not have realized that he had taken an oath at the deposition. Furthermore, the trial court felt that such impeachment would unnecessarily bring the issue of religion before the jury. We find no error in the trial court's decision.
Plaintiff claims that the trial court erred in preventing Rios from being re-cross-examined regarding where his attention was focused at the time of the accident. On redirect examination, defense counsel asked Rios whether he saw anyone with Natalie at the time she was hit by the truck. Plaintiff's counsel asked on re-cross-examination, "I take it, sir, that your concentration, after looking at the little girl, was primarily on the truck, correct?" The trial court sustained defense counsel's objection to this question as beyond the scope of the direct examination.
The proper scope of cross-examination is determined by the trial court, whose decision will not be disturbed unless the trial court abused its discretion. (Leonardi v. Loyola University (1993), 262 Ill.App.3d 411, 199 Ill.Dec. 13, 633 N.E.2d 809.) We find that the trial court erroneously ruled that plaintiff's question was beyond the scope of the direct examination since the question went to the very issue of what the witness saw just prior to the collision. However, we do not believe that this error affected the outcome below.
Plaintiff next complains that the trial court improperly instructed the jury on the second paragraph of Illinois Pattern Jury Instructions, Civil, No. 12.04 (3d ed. 1989) (hereinafter IPI Civil 3d), which states that if the jury finds someone else to be the sole proximate cause of Natalie's injuries, it should find in favor of defendants. Plaintiff claims it was error to give this instruction since there was no evidence adduced at trial that the conduct of a third party was the sole proximate cause of Natalie's death and defendants' pleadings did not assert an affirmative defense that a third person's conduct was the sole cause of Natalie's death.
The trial court's determination as to what instruction should be given to the jury will not be reversed absent an abuse of discretion. (Leonardi v. Loyola University, 262 Ill.App.3d at 417, 199 Ill.Dec. 13, 633 N.E.2d 809.) An instruction is properly tendered to the jury where it is supported by some evidence in the record. Yates v. Chicago National League Ball Club, Inc. (1992), 230 Ill.App.3d 472, 172 Ill.Dec. 209, 595 N.E.2d 570.
The sole proximate cause instruction does not precisely fit the facts of this case. Defendants' theory was not that Natalie's grandmother was the sole proximate cause of Natalie's injuries, but rather that her failure to supervise was the only negligent act which contributed to the injuries, and that the intervening cause of injury, when the truck ran over Natalie, occurred without defendants' negligence. In light of the arguments at trial, we do not believe that the improper instruction misled the jury. Defendants presented evidence that the failure to supervise was the only negligent act which contributed to the injury, and they presented neither evidence nor argument to show that that act caused the injury without the intervention of other causes. In this context reasonable jurors would have understood the instruction to mean that they should find in defendants' favor if the failure to supervise were the sole negligent cause of the injury. Plaintiffs have not shown that this instruction had prejudicial effect, and therefore it is not grounds for reversal.
In her petition for rehearing, plaintiff claims that our decision that the giving of the sole proximate cause instruction was not reversible error, is contrary to the supreme court's decision in Duffy v. Cortesi (1954), 2 Ill.2d 511, 119 N.E.2d 241. While plaintiff claims that the facts in the instant case are *666 virtually identical to those in Duffy, we find at least two significant differences. Although both our case and Duffy involved a vehicle striking and killing a young child as she crossed the street with her grandmother, in Duffy, the grandmother too was killed by the vehicle and therefore unable to offer any testimony as to how the accident occurred. In our case the grandmother survived the accident and provided inconsistent testimony at trial as to how the accident occurred. Furthermore, the driver's negligence in Duffy was apparent by his action of driving into the intersection although he admittedly was blinded by the sun and could not see if there were any pedestrians in his path. The truck driver in the instant case admitted no such negligent conduct. Due to these factual dissimilarities, the decision in Duffy does not mandate a like outcome in the instant case.
Plaintiff makes brief mention in her petition for rehearing of the Duffy court's ruling that giving an erroneous peremptory instruction to the jury requires reversal. Plaintiff neither raised this argument in the trial court nor in either of her two briefs filed with this court, and only mentions this issue in passing in her petition for rehearing. We therefore deem this issue waived. See Gaslite Illinois, Inc. v. Northern Illinois Gas Co. (1977), 46 Ill.App.3d 917, 6 Ill.Dec. 90, 362 N.E.2d 725.
Plaintiff next contends that the trial court erred in failing to instruct the jury on defendant Kelly's statutory obligation to decrease speed when approaching and crossing an intersection. Plaintiff sought to have the jury instructed:
"No vehicle may be driven upon any highway of this State at a speed which is greater than is reasonable and proper with regard to traffic conditions and the use of the highway, or endangers the safety of any person or property. The fact that the speed of a vehicle does not exceed the applicable maximum speed limit does not relieve the driver from the duty to decrease speed when approaching and crossing an intersection * * * or when special hazard exists with respect to pedestrians or other traffic or by reason of * * * highway conditions. Speed must be decreased as may be necessary to avoid colliding with any person or vehicle on or entering the highway in compliance with legal requirements and the duty of all persons to use due care."
(625 ILCS 5/11-601(a) (West 1992); IPI Civil 3d No. 60.01.) An instruction concerning the violation of a statute should be given only when the evidence supports a finding that a violation actually occurred. (Guy v. Steurer (1992), 239 Ill.App.3d 304, 179 Ill.Dec. 1020, 606 N.E.2d 852.) The notes on the use for IPI Civil 3d No. 60.01 state that the instruction should be given only when there is evidence from which the jury can find that the violation was a proximate cause of the injury. (IPI Civil 3d No. 60.01, Notes on Use.) The trial court has discretion in deciding which issues are raised by the evidence, and its decision will not be disturbed on review absent a clear abuse of discretion. Johnson v. Owens-Corning Fiberglas Corp. (1992), 233 Ill.App.3d 425, 174 Ill.Dec. 583, 599 N.E.2d 129.
That discretion was not abused here since no evidence was introduced at trial to suggest that defendant was driving too fast for conditions. Defendant's vehicle was described by one witness as traveling between 3 and 5 miles per hour and by another as traveling about 10 miles per hour. One witness described the vehicle as moving at a crawl.
That the defendant in Agnello v. Puzzo (1982), 110 Ill.App.3d 913, 66 Ill.Dec. 722, 443 N.E.2d 648, was driving too fast for conditions was evidenced by the fact that he saw the child six feet away from his car, but could not stop without running over the child. The fact that the defendant here was able to stop his vehicle within a foot after seeing Natalie's grandmother at the rear of his vehicle demonstrates that defendant was not driving too fast for conditions. There is no evidence that defendant's speed as he approached the intersection proximately caused him to hit Natalie. The trial court did not abuse its discretion when it determined that the evidence did not support this instruction.
Plaintiff next claims that the trial court erred in failing to instruct the jury that there is a statute which prohibits a driver from *667 driving on the left side of the roadway within a no-passing zone. (625 ILCS 5/11-707 (West 1992).) Plaintiff maintains that this instruction should have been given since defendant Kelley admitted that, in making his right-hand turn from Fullerton to California, he first went eastbound on Fullerton, then crossed over the yellow lines on California, and entered the left-hand turn lane for northbound traffic. Defendant Kelley testified that he had to first go eastbound on Fullerton in order to clear the curb while making his right-hand turn onto California Avenue.
Despite the fact that defendant Kelley crossed over the yellow lines, the instruction regarding driving on the left side of the roadway was properly refused. An injury must have a direct and proximate connection with a violation of a statute in order for the violation of the statute to be relevant. (Jones v. Polish Falcons (1993), 244 Ill.App.3d 348, 185 Ill.Dec. 263, 614 N.E.2d 397,.) The evidence presented at trial indisputably showed that only the front part of the truck traveled across the yellow lines and into the left-hand turn lane of northbound California Avenue and the travel of the truck across the double yellow lines had ceased at the time that the accident occurred at the rear wheels. Natalie was hit by the rear of the truck only after the truck had returned to the southbound lanes of California. The instruction was therefore properly refused on the basis that the front of the truck passing over the yellow lines was not the proximate cause of Natalie's injuries.
Plaintiff next claims that defense counsel made improper comments in closing argument. Plaintiff's first complaint is with defense counsel's comment that Natalie's grandmother suffered no injuries from colliding with the truck. When defense counsel commented that Natalie's grandmother obtained no medical treatment, the trial court informed the jury that there was no evidence on this issue. Defense counsel proceeded to state that the grandmother was not injured. Plaintiffs' objection to this comment, however, was overruled.
Plaintiff contends that defendants should have been prevented from discussing the issue of the grandmother's injuries since the parties had agreed that plaintiff would only call the grandmother's physician to testify as to her injuries on rebuttal if defendants attacked the validity of the grandmother's injuries. Plaintiff claims that because of this agreement, and the fact that the grandmother's injuries were not at issue, she did not call the grandmother's physician to testify. Therefore, plaintiff claims, defendants violated this agreement when defense counsel argued to the jury that the grandmother suffered no injuries from contact with the truck.
Our review of the record fails to reveal that the parties entered into any agreement not to discuss whether the grandmother was injured by the truck. In fact, defense counsel stated that the issue of whether the grandmother was injured was relevant to the determination of whether the grandmother was near Natalie at the time of the accident. During both her direct and cross-examination, the grandmother testified that the truck hit and injured her as well as Natalie. The grandmother stated that her knee and shoulder were injured. Thus, defense counsel was entitled to comment on whether the grandmother was actually injured.
Plaintiff next claims that defense counsel misstated the law in Illinois by arguing that the law permits illegal right-hand turns "as an ordinary affair of life." Plaintiff also claims that defense counsel improperly stated that this was an unavoidable accident because Natalie Diaz ran into the intersection, improperly interjected race and national origin into his closing argument and improperly referred to a witness statement that had been mistranscribed. Plaintiff, however, never objected to these comments, and a failure to object to alleged errors in closing argument waives any objection to that argument. Pharr v. Chicago Transit Authority (1991), 220 Ill.App.3d 509, 163 Ill.Dec. 211, 581 N.E.2d 162.
Plaintiff next claims that the trial court erred in refusing to direct a verdict on the issue of liability. A verdict for plaintiff should be directed only where the evidence, when viewed most favorably to defendants, so overwhelmingly favors plaintiff that no *668 contrary verdict based on this evidence could ever stand. (Pedrick v. Peoria & Eastern R.R. Co. (1967), 37 Ill.2d 494, 229 N.E.2d 504.) Questions of negligence, due care and proximate cause are ordinarily questions of fact for the jury to decide and become questions of law only when the facts are undisputed or there can be no difference in the inference a jury could draw from the facts. Ney v. Yellow Cab Co. (1954), 2 Ill.2d 74, 117 N.E.2d 74.
In support of her argument that a directed verdict should have been granted, plaintiff relies on Fox v. Calhoun (1975), 34 Ill.App.3d 336, 340 N.E.2d 125, and Agnello v. Puzzo (1982), 110 Ill.App.3d 913, 66 Ill.Dec. 722, 443 N.E.2d 648. In Fox, although the defendant's view of pedestrians crossing the street was admittedly blocked by a Chicago Transit Authority bus, defendant proceeded into the intersection. The court therefore found that a directed verdict had been properly granted in plaintiff's favor since the facts irrefutably showed that defendant moved forward when it was not reasonably safe for him to do so. In Agnello, the defendant admitted that he was aware of children in the vicinity of an ice cream truck, but rather than stop his car, he chose to enter the wrong lane of traffic, where pedestrians would not expect his car to be. It was defendant's presence in the left-hand side of the intersection that was clearly the proximate cause of the plaintiff's injury. The fact that the defendant's speed was unreasonable was evidenced by the fact that he saw the child six feet away but could not stop his car in time to avoid hitting the child. A directed verdict was therefore properly entered in plaintiff's favor.
In contrast, the defendant in the instant case claimed that he did not see any children near the intersection and never saw Natalie until after the she was hit by the truck. Once he was told to stop his truck, he was able stop within a foot. In addition, there was witness testimony at trial consistent with the defense theory that Natalie was left unattended and walked into the intersection and into the rear wheels of defendants' truck. Certainly there was ample evidence also supporting plaintiff's theory that while making his turn, defendant Kelley did not look to see if pedestrians were in his path and that his manner of turning misled Natalie's grandmother into thinking that it was safe to cross at the intersection. This evidence clearly presented a factual question for the jury, and plaintiff's motion for a directed verdict was properly denied.
Plaintiff's last contention is that the jury verdict was against the manifest weight of the evidence. A verdict is considered to be against the manifest weight of the evidence where the opposite result is clearly apparent and the conclusion of the jury appears to be unreasonable, arbitrary and not based on the evidence. (Duffek v. Vanderhei (1980), 81 Ill.App.3d 1078, 37 Ill.Dec. 52, 401 N.E.2d 1145.) As noted above, there was evidence supporting defendant's theory that Natalie moved into the rear wheels of the truck before defendant Kelley could have been aware of Natalie's presence. The evidence presented conflicts in the testimony which were properly resolved by the jury.
Accordingly, for the reasons set forth above, the judgment entered in favor of defendants is affirmed.
Affirmed.
GORDON and THOMAS J. O'BRIEN, JJ., concur.