BRANDON ISER *et al.*, Plaintiffs-Appellants, v. COPLEY MEMORIAL HOSPITAL *et al.*, Defendants-Appellees.

Third District    No. 3—96—0625

Opinion filed May 6, 1997.

Edward Walsh, Thomas L. Knight, and Sarah E. Kallas, all of Walsh, Knippen, Knight & Diamond, Chartered, of Wheaton, for appellants.

Richard Barrett, of Cassiday, Schade & Gloor, of Wheaton, and Carolyn Quinn, of Cassiday, Schade & Gloor, of Chicago, for appellee Copley Memorial Hospital.

Brian Henry, Christine M. Koman, Robert Marc Chemers, and Scott L. Howie, all of Pretzel & Stouffer, Chartered, of Chicago, for appellee Manuel Sarroca.

JUSTICE MICHELA delivered the opinion of the court:

Brandon Iser (Brandon) and Northern Bank, filed a medical negligence action in the circuit court of Will County against Copley Memorial Hospital (CMH) and Dr. Manuel Sarroca, seeking recovery for personal injuries. Plaintiffs allege that defendants negligently rendered treatment and care to Brandon after he was involved in an auto accident. A jury returned a verdict in favor of defendants, the court denied plaintiffs' post-trial motion, and plaintiffs appeal.

On appeal, plaintiffs raise numerous issues that can be generally described as errors concerning the court's restricting direct examination of an expert; refusing cross-examination of experts using certain exhibits; limiting cross-examination of an expert to matters testified to on direct examination; and refusing to admit certain exhibits into evidence. Plaintiffs contend that the cumulative effect of such errors deprived Brandon of a fair trial. For the following reasons, we affirm.

### Facts

Plaintiffs allege that defendants negligently failed to diagnose a spine fracture and internal carotid artery injury Brandon incurred in an auto accident. Plaintiffs contend that defendants' negligent treatment of Brandon was the proximate cause of a stroke he suffered, which left him with permanent physical injuries.

At trial, and during direct examination of plaintiffs' expert, Dr. Donald Austin, plaintiffs attempted to elicit testimony concerning the authoritative nature of four peer-review medical journal articles, exhibits 77 through 80 concerning internal carotid artery injuries, for the purpose of laying a foundation to impeach defendants' experts.

Defendants objected, referring to Dr. Austin's deposition testimony wherein he failed to express an opinion as to these articles and stated that he was unaware of, and did not review for this case, any articles concerning internal carotid artery injuries. Defendants also complained that the articles had not been properly disclosed. Plaintiffs suggested that the court give the jury a cautionary instruc-

tion as to the limited, authoritative nature of Dr. Austin's testimony; however, the court sustained defendants' objection and would not allow plaintiff to question Dr. Austin further about these articles.

Thereafter, plaintiffs attempted to use exhibits 77 through 80 to impeach defendants' experts. Defendants objected, plaintiffs made an offer of proof, and the court sustained defendants' objections.

During the cross-examination of Dr. Sarroca's expert, Dr. Leonard Rutkowski, plaintiffs attempted to elicit his opinion concerning the operable nature of Brandon's condition and the effect of movement of Brandon's head and neck while under defendants' care. Plaintiffs planned to impeach Dr. Rutkowski's testimony with his deposition testimony. Defendants objected, arguing that it went beyond the scope of direct examination. Plaintiffs made an offer of proof; however, the court sustained defendants' objection and limited plaintiffs' questioning to matters Dr. Rutkowski had testified to on direct examination.

## Analysis

Plaintiffs contend that the court erred in not allowing Dr. Austin to testify to the authoritative nature of exhibits 77 through 80.

■ Effective January 1, 1996, Illinois Supreme Court Rule 213(g) (Official Reports Advance Sheet No. 20 (September 27, 1995), R. 213(g), eff. January 1, 1996) replaced the eliminated Rule 220 (134 Ill. 2d R. 220) and required that, upon written interrogatory, a party must disclose the subject matter, conclusions/opinions, qualifications, and all reports of a witness who will offer any opinion testimony.

■ In this case, at a February 6, 1996, Rule 237 conference, all parties agreed to exchange medical articles. Exhibits 77 through 80 were not disclosed at this time but, rather, plaintiffs maintain that all of defendants' attorneys received exhibits 77 through 80 on February 12, 1996, the day before the articles were used. To the contrary, defendants maintain that Dr. Sarroca's attorney had not yet received exhibits 77 through 80 at the time plaintiffs attempted to admit them into evidence. Plaintiffs assert that defendants failed to comply with the provisions of Rule 213(g).

In light of plaintiffs' acknowledgment that they were in possession of exhibits 77 through 80 at the time of the Rule 237 conference but did not disclose the exhibits until the day before they used them in court, had the court allowed use of the exhibits, defendants would have been afforded little time to prepare their cross-examination of Dr. Austin's authoritative opinion. See *Leonardi v. Loyola University*, 168 Ill. 2d 83, 104 (1995) (effective cross-examination of experts requires advance preparation). Further, we reject plaintiffs' assertion

that an expert's foundational testimony as to the authoritative nature of a medical article is not an opinion, as the term is used in Rule 213(g). As noted in *Wilkerson v. Pittsburgh Corning Corp.*, 276 Ill. App. 3d 1023, 1034-35 (1995), Rule 213(g) requires disclosure of "all" opinion testimony prior to trial.

■ We also find no merit to plaintiffs' contention that, since defendants failed to file a motion *in limine* to bar use of exhibits 77 through 80, they did not regard the production of said exhibits as a Rule 213(g) issue. There is no indication in the record or from oral arguments to this court that plaintiffs informed defendants at the Rule 237 conference that they possessed and would be producing such exhibits. Thus, defendants' failure to move to exclude exhibits that they were unaware of certainly does not relieve plaintiffs of their duty to comply with disclosure requirements.

■ Plaintiffs, citing *Southern Illinois Airport Authority v. Smith*, 267 Ill. App. 3d 201, 209 (1994), contend further that, even if they did not properly disclose exhibits 77 through 80, the court should have allowed them to use the exhibits because the articles were in the public domain; were only to be used on cross-examination; and were such that the witnesses should have been familiar with the articles if their testimony was to be given credibility.

However, in *Southern*, unlike the instant case, the exhibit in question was a deed. The *Southern* court determined that, because the deed was easily obtainable to both parties through the recorder of deeds office, no violation of discovery rules resulted from the failure to disclose. The court in *Southern*, 267 Ill. App. 3d at 207, made it clear that its decision was limited to documents used in cross-examination only and that, if such documents were used by the cross-examiner to bolster the testimony of his witnesses during his case in chief, it would not hesitate to rule against such nondisclosure. Further, the *Southern* court was careful to point out that it was not advocating or condoning withholding discovery documents that are damaging to the party who requests their production.

Although plaintiffs maintain that the purpose of Dr. Austin's testimony was to establish the authoritativeness of exhibits 77 through 80, it is reasonable to assume that these exhibits supported and bolstered plaintiffs' experts' opinions. It is also reasonable to infer that such exhibits, which discredit the opinion of defendants' experts, were damaging to defendants, who had initially requested the production of such documents.

Importantly, plaintiffs acknowledge that, in answers to interrogatories, Dr. Austin indicated that in forming the basis of his opinion he did not rely on any articles that suggested defendants deviated

from the standard of care. This acknowledgement is inconsistent with plaintiffs' contention that defendants knew or should have known that such exhibits would be used, and it supports a reasonable inference that defendants were "surprised" by such exhibits.

The committee comments to Rule 213(g) state that "[i]n light of the elimination of former Supreme Court Rule 220, the definition of an opinion witness is now a person who will offer 'any' opinion testimony. It is the Committee's belief that in order to avoid surprise, the subject matter of all opinions must be disclosed pursuant to this rule and Supreme Court Rule 218, and that no new or additional opinions will be allowed unless the interests of justice require otherwise." Official Reports Advance Sheet No. 20 (September 27, 1995), R. 213(g), Committee Comments, eff. January 1, 1996.

At his deposition, Dr. Austin failed to express an opinion as to the exhibits in question. Specifically, he stated that he was unaware of, and did not review for this case, any articles concerning internal carotid artery injuries. Therefore, pursuant to the committee comments of Rule 213(g), to allow Dr. Austin to testify at trial as to the authoritative nature of exhibits 77 through 80 would be to allow him to give a new opinion that is contrary to his deposition testimony. To do so appears to be contrary to the purpose of Rule 213(g). Also, under eliminated Rule 220, this court has consistently held that an expert's direct testimony is limited to comments within the scope of, and consistent with, the facts and opinions disclosed in discovery. See *Lowney v. Arciom*, 232 Ill. App. 3d 715 (1992).

Citing *Roach v. Springfield Clinic*, 157 Ill. 2d 29 (1993), plaintiffs maintain that had Dr. Austin been allowed to establish the authoritativeness of exhibits 77 through 80, they would have been able to discredit the direct testimony of defendants' experts and the jury might have reached a different verdict. *Roach* is distinguishable.

The plaintiffs in *Roach* alleged that the clinic was guilty of an unreasonable delay in providing anesthesia. One issue of the case concerned whether certain conversations between a nurse anesthetist and a physician were protected by statutory privilege. The court determined that testimony concerning these conversations should not have been kept from the jury because the conversations were not privileged. The court noted that, although the jury heard testimony that the anesthesiology team were not notified at the times indicated by medical records, there was no other evidence presented that the delay was attributable to mistakes of the clinic's staff. Since the issue of negligent delay was central to plaintiffs' case, the court was unable to say that admission of the excluded evidence would not have affected the jury's decision.

In the instant case, however, through plaintiffs' experts, the jury heard medical testimony that conflicted with the opinions of defendants' experts. Therefore, plaintiffs were not deprived of the opportunity to challenge the opinions of defendants' experts with conflicting medical evidence.

Considering that the jury heard expert opinion testimony that conflicted with and refuted defendants' expert opinions, coupled with the fact that it was within the province of the jury to resolve such conflicts in medical opinion testimony (*Wodziak v. Kash*, 278 Ill. App. 3d 901, 913-14 (1996)), we find that the interest of justice would not have been served in allowing Dr. Austin to testify to the authoritativeness of exhibits 77 through 80, which were not properly disclosed. See also *Sohaey v. Van Cura*, 158 Ill. 2d 375, 380 (1994) (courts are vested with broad discretion to formulate an appropriate response to violations of discovery rules). Therefore, the court did not abuse its discretion in restricting such testimony, and we hold our decision is dispositive of the remaining issues concerning plaintiffs' use of exhibits 77 through 80 in cross-examination of defense experts and in offering said exhibits into evidence.

■ Lastly, plaintiffs contend that the court erred in restricting their cross-examination of Dr. Rutkowski to matters he had testified to on direct examination. Plaintiffs cite *Leonardi*, 168 Ill. 2d at 105, wherein the court stated that facts within a witness' knowledge may be developed on cross-examination that explain, qualify, discredit, or destroy the witness' direct testimony, even though not raised on direct examination.

The expert in *Leonardi* opined on direct examination that defendants had deviated from the standard of care. On cross-examination, defendants asked the expert if these deviations caused the decedent's injuries. The court found that this question would explain, qualify, discredit, or destroy the expert's direct testimony, and it found no error in permitting such cross-examination.

In the present case, Dr. Rutkowski failed to give his opinion on direct examination concerning the operable nature of Brandon's condition and the effect of movement of Brandon's head and neck while under defendants' care. Considering cross-examination is limited to matters discussed on direct, and the scope of such cross lies within the court's discretion (*Nunley v. Mares*, 114 Ill. App. 3d 779, 791 (1983)), coupled with the fact that deposition testimony is admissible for impeachment only where it contradicts an in-court statement of a witness on a material matter (*Law v. Central Illinois Public Service Co.*, 86 Ill. App. 3d 701 (1980)), we find that the court did not err in restricting plaintiffs' cross-examination of Dr. Rutkowski.

414

Based on the foregoing, the circuit court of Will County is affirmed.

Affirmed.

BRESLIN and SLATER, JJ., concur.