NO. 4-04-0250

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

MICHAEL B. MYERS, Independent Executor of the Estate of MARY

PRILLMAYER, Deceased,

Plaintiff-Appellant,

v.

HERITAGE ENTERPRISES, INC., a 

Corporation,

Defendant-Appellee. 

)

)

)

)

)

)

)

)

Appeal from

Circuit Court of

Brown County

No. 01L7

Honorable

David K. Slocum,

Judge Presiding.

JUSTICE MYERSCOUGH delivered the opinion of the court:

Plaintiff, Michael B. Myers, independent executor of the estate of decedent, Mary Prillmayer, appeals the judgment entered in favor of defendant, Heritage Enterprises, Inc., upon the jury's verdict.  We reverse and remand.

I. BACKGROUND

In August 2000, Penny Chapman and Carolyn Butler, certified nurse's aides/nursing assistants (CNAs), worked at Heritage Manor, a nursing home owned and operated by defendant. They attempted to transfer decedent, a 78-year-old resident, from her wheelchair to her bed using a device known as a Hoyer lift.  During the process, decedent fell approximately 18 inches and hit the bar of the Hoyer lift, fracturing the tibia and fibula on both legs.  Decedent died approximately two weeks later, apparently of unrelated causes because there were no allegations that the fall contributed to her death. 

The nursing home reported the incident to the Illinois Department of Public Health (IDPH), which investigated the matter.  Corey Crouch, a registered nurse who investigates for IDPH, concluded that decedent fell due to no fault of the facility or the staff. 

In July 2001, plaintiff brought suit against defendant, alleging common-law negligence (count I) and violation of the Nursing Home Care Act (Act) (210 ILCS 45/1-101 through 3A-101 (West 2000)) (count II).  The Act provides that owners and operators of facilities are liable to a resident for injuries caused by the intentional or negligent acts of their employees or agents.  210 ILCS 45/3-601 (West 2000).  

On the motion of defendant, the trial court dismissed count II on the basis that "[a] [c]ause of [a]ction under said *** Act does not survive death of resident."  We reversed the trial court in 
Myers v. Heritage Enterprises, Inc.
, 332 Ill. App. 3d 514, 515, 773 N.E.2d 767, 768 (2002), holding that the cause of action survived decedent's death.  

Plaintiff ultimately withdrew count I, and the matter proceeded to trial on count II in January 2004.  Count II alleged that defendant committed the following careless and negligent acts:  (1) improperly positioning decedent in the Hoyer-lift sling, (2) failing to observe decedent was not properly seated in the Hoyer-lift sling, (3) failing to provide supervision of the use of the Hoyer lift, (4) failing to properly train its staff in the transfer of patients by use of the Hoyer lift, (5) using obsolete and inadequate equipment for transporting nonambulatory patients, 6) failure of staff to properly position themselves, (7) careless and negligent operation of the Hoyer lift,(8) employing inexperienced staff, and (9) impairing the movement of the Hoyer lift while transferring the patient.

At the jury instruction conference prior to trial, plaintiff offered Illinois Pattern Jury Instructions, Civil, Nos. 10.01 and 10.04 (2000) (hereinafter IPI Civil (2000)), the ordinary negligence standard-of-care instructions.  Defendant, however, argued that the professional negligence instruction, IPI Civil (2000) No. 105.01, applied to the actions of the CNAs.  The trial court reserved ruling on the appropriate jury instruction because defense counsel did not have the exact instruction he intended to tender and the court believed it unfair to ask plaintiff's counsel to respond to an instruction he had been unable to review. 

During the trial, plaintiff presented the testimony of, among others, David Jones, an operations manager for Heckman Health Care, and Mary Hendricks, a registered nurse.  (Plaintiff had intended to call Donna Bankard, R.N., to testify as to her opinions of the alleged wrongdoings on the part of defendant.  In January 2004, the trial court granted defendant's motion to bar Bankard because she had never used a Hoyer lift.)  Jones testified that certain new slings and chains were available for Hoyer lifts in August 2000.  He also identified the Hoyer instruction manual, which the court admitted into evidence.  Hendricks also demonstrated the proper use of the Hoyer lift.

Defendant called Pamela Sue Brown, holder of a Ph.D. in nursing, who testified as to the nursing standard of care in the use of the Hoyer lift.  She reviewed numerous documents, including the pleadings, medical records, discovery documents, IDPH report, IDPH investigation materials, internal investigation materials from the nursing home, incident report, internal transfer policy for use of the Hoyer lift, the operator's manual for the Hoyer lift, discovery depositions, and textbooks on transfer techniques.  In her opinion, to a reasonable degree of nursing certainty, the CNAs used an acceptable transfer procedure. 

Chapman and Butler, the two CNAs who moved the decedent using the Hoyer lift, also testified about what occurred when decedent fell.  

The trial court resumed the jury instruction conference on the third day of trial.  Plaintiff again offered IPI Civil (2000) Nos. 10.01 and 10.04, and defendant offered IPI Civil (2000) 
No. 105.01 in lieu of plaintiff's instructions.  Defense counsel stated he originally intended only to tender the first paragraph of IPI Civil (2000) No. 105.01 but believed that the second paragraph--informing the jury it could only decide whether the standard of care had been met from expert testimony--was also appropriate.  Plaintiff objected to the professional malpractice instruction because it did not apply to the negligence of the CNAs in the nursing home.  The court rejected plaintiff's instructions and instructed the jury on professional negligence.

Defendant moved for a directed verdict at the close of plaintiff's case and again at the close of defendant's case.  The trial court denied both motions.  On January 14, 2003, the jury returned a verdict in favor of defendant.

Plaintiff filed a motion to vacate the judgment and grant a new trial.  Plaintiff claimed the trial court erred by  permitting certain comments in defense counsel's opening and closing statements that plaintiff, the independent executor, would receive any damage award; allowing testimony that plaintiff was not related to decedent; and instructing the jury with IPI Civil (2000) No. 105.01 instead of IPI Civil (2000) Nos. 10.01 and 10.04.  Although the order indicates the court was troubled by defense counsel's opening statement, the court denied the motion in its entirety.  

Plaintiff appealed, arguing (1) the trial court erred in giving the jury a professional negligence instruction for the standard of care of CNAs requiring expert testimony and (2) the arguments and evidence presented that the award would be payable to plaintiff and that plaintiff was not related to decedent prejudiced plaintiff and denied him a fair trial.

II. ANALYSIS

Plaintiff filed this case as an ordinary negligence action under the Act.  The elements of a cause of action for negligence are (1) the existence of a duty owed by defendant to plaintiff, (2) a breach of that duty, and (3) injury proximately caused by that breach.  
Parker v. Illinois Masonic Warren Barr Pavilion
, 299 Ill. App. 3d 495, 499, 701 N.E. 2d 190, 193 (1998). Over plaintiff's objection, the trial court instructed the jury as follows:

"In providing professional services to Mary Prillmayer, a certified nurse's aide must possess and apply the knowledge and use the skill and care ordinarily used by a reasonably well-qualified certified nurse's aide under circumstances similar to those shown by the evidence.  A failure to do so is professional negligence.

The only way in which you may decide whether a certified nurse's aide possessed and applied the knowledge and used the skill and care which the law required of him is from expert testimony.  You must not attempt to determine this question from any personal knowledge you have."  

See IPI Civil (2000) No. 105.01.

The court rejected the instructions tendered by plaintiff:

"When I use the term 'negligence' in these instructions, I mean the failure to do something which a reasonably careful person would do, or the doing of something which a reasonably careful person would not do, under circumstances similar to those shown by the evidence.  The law does not say how a reasonably careful person would act under those circumstances.  That is for you to decide."

See IPI Civil (2000) No. 10.01.

"It was the duty of the defendant's employees, before and at the time of the occurrence, to use ordinary care for the safety of Mary Prillmayer.  This means it was the duty of the defendant's employees to be free from negligence."  

See IPI Civil (2000) No. 10.04.

It is within the discretion of the trial court which jury instructions to give to the jury, and the court's decision will not be disturbed absent an abuse of that discretion.  
Schultz v. Northeast Illinois Regional Commuter R.R. Corp.
, 201 Ill. 2d 260, 273, 775 N.E.2d 964, 972 (2002).  Whether a trial court abused its discretion depends on whether, taken as a whole, the instructions fairly, fully, and comprehensively apprised the jury of the relevant legal principles.  
Schultz
, 201 Ill. 2d at 273-74, 775 N.E.2d at 972-73.  Reversal is warranted if the faulty jury instructions misled the jury and resulted in prejudice to the appellant.  
Schultz
, 201 Ill. 2d at 274, 775 N.E.2d at 973.

Plaintiff argues that the trial court erred in giving the professional negligence instruction because (1) operation of the Hoyer lift does not constitute medical treatment or diagnosis by a professional and, therefore, does not require expert testimony; (2) the CNAs were not parties to the lawsuit, as plaintiff brought the suit under the Act, which imposes liability on facilities for the negligence of its employees; (3) the complaint sounded in negligence and the court instructed the jury on negligence in the issues instruction; (4) several of the allegations of negligence in the complaint did not relate to the actions of defendant's employees, rendering the professional negligence standard particularly inappropriate for those allegations; and (5) the proper standard of care should have been based upon the manufacturer's operational instructions.

Defendant frames the issue as whether the operation of a Hoyer lift to transfer a patient can be evaluated without an expert witness.  If not, according to defendant, the proper standard of care is professional negligence. 

A determination of the proper standard of care requires an examination of the nature of the action brought.  Where, as here, the claim is statutory, an examination of the statute is necessary to determine whether it contemplates a professional standard of care or an ordinary, reasonable standard of care.  See, 
e.g.
, 
Advincula v. United Blood Services
, 176 Ill. 2d 1, 13, 678 N.E.2d 1009, 1016 (1996).  When determining the legislative intent, a court must first look at the plain meaning of the statutory language.  
Long v. Mathew
, 336 Ill. App. 3d 595, 603, 783 N.E.2d 1076, 1082 (2003).  

Plaintiff brought a statutory claim under the Act.  
Pursuant to the Act, owners and operators of nursing home facilities are liable to residents for injuries caused by the negligent acts of their employees.  210 ILCS 45/3-601 (West 2000).  

The Act guarantees nursing home residents certain rights, including the right not to be subjected to abuse or neglect by nursing home personnel.  210 ILCS 45/2-107 (West 2000); 
Harris v. Manor Healthcare Corp.
, 111 Ill. 2d 350, 358, 489 N.E.2d 1374, 1377 (1986).  The Act defines "neglect" as:

"[A] failure in a facility to provide adequate medical or personal care or maintenance, which failure results in physical or mental injury to a resident or in the deterioration of a resident's physical or mental condition."  210 ILCS 45/1-117 (West 2000). 

See also 
Harris
, 111 Ill. 2d at 366-67, 489 N.E.2d at 1381.

"Adequate care" has been deemed synonymous with "ordinary care," "due care," or "reasonable care," the terms used to describe the standard of care for negligence.  
Harris
, 111 Ill. 2d at 367, 489 N.E.2d at 1381.  The Act defines "personal care" to include assistance with movement of the patient.  210 ILCS 45/1-120 (West 2000).  Consequently, the plain language of the statute indicates that the appropriate standard of care for liability under the Act is one of ordinary negligence, which does not require expert testimony.  See 
Eads v. Heritage Enterprises, Inc.
, 325 Ill. App. 3d 129, 137, 757 N.E.2d 107, 113 (2001) (noting that most of the Act "addresses nonmedical long-term care, which does not require expert testimony"), 
aff'd
, 204 Ill. 2d 92, 787 N.E.2d 771 (2003); see also, 
e.g.
, 
Parker
, 299 Ill. App. 3d at 503, 701 N.E.2d at 195 (holding that the trial court abused its discretion in permitting the undisclosed opinion of a physician about the standard of rehabilitation care in an ordinary negligence claim brought pursuant to the Act).

The professional negligence instruction given informed the jury that it could only determine the standard of care by expert testimony:

"The only way in which you may decide whether a certified nurses's aide possessed and applied the knowledge and used the skill and care which the law required of him is from expert testimony.  You must not attempt to determine this question from any personal knowledge you have."

See IPI Civil (2000) No. 105.01.  Yet, the professional negligence instruction itself actually permits evidence from sources other than expert testimony:

"The only way in which you may decide whether (a)(any) defendant possessed and applied the knowledge and used the skill and care which the law required of him is from (expert testimony)(and)(or)(evidence of professional standards or conduct) presented in the trial." IPI Civil (2000) No. 105.01.

The language "evidence of professional standards or conduct" was not included in the instruction.

Further, the act of CNAs moving a nursing home resident does not constitute skilled medical care requiring the professional negligence instruction.  A professional is "[a] person who belongs to a learned profession or whose occupation requires a high level of training and proficiency."  Black's Law Dictionary 1246 (8th ed. 2004).  IDPH requires that nursing assistants meet certain training requirements, including 120 hours of instruction (completed within no less than 21 days and no more than 120 days, unless the program is conducted by an educational institution on a term, semester, or trimester basis).  77 Ill. Adm. Code §395.150 (Conway Green CD-ROM April 2001).  Successful completion of the program means completion of at least 80 hours of theory and 40 hours of clinical work, completion of IDPH-approved manual skills, and passing the IDPH-established competency test.  77 Ill. Adm. Code §395.173 (Conway Green CD-ROM April 2001).  The Act does not require nursing assistants to obtain a high school diploma.  210 ILCS 45/3-206 (West 2000) (requiring that nursing assistants complete at least eight years of grade school or provide proof of equivalent knowledge).  A nursing assistant's duties, as testified to by Chapman and Butler, include bathing, feeding, weighing, dressing, transferring, and communicating with patients, as well as assisting with toileting functions.  Given the minimal training requirements and the fact that nursing assistants provide primarily personal care, the nursing assistant position is not a professional position requiring the professional negligence instruction.

Because the proper standard of care was one of ordinary negligence, the trial court should have instructed the jury with IPI Civil (2000) Nos. 10.01 and 10.04, which would have informed the jury that it had to decide how a reasonably careful person would have acted under the circumstances.  Under this standard, the parties could have presented evidence to assist the jury in its determination, including expert testimony, IDPH regulations, manufacturer's instructions, or industry standards, although this would not be required.  

Defendant argues that even if the trial court gave the wrong instructions, plaintiff suffered no prejudice because he, too, presented expert testimony at trial.  Yet, the instructions given to the jury specifically informed it that the only way to determine whether the CNAs used the skill and care required of them was from expert testimony.  The jury was told it could not rely on its own knowledge or other evidence.  Moreover, the evidence conflicted as to whether the manufacturer's instructions were followed.  An assessment of the credibility of the CNAs' testimony was a determination to be made by the jury.  If the jury had been instructed that it could determine how a reasonably careful person would have acted under the circumstances, it may have determined that the CNAs were, in fact, negligent, despite Dr. Brown testifying that the CNAs met the standard of care.

Consequently, the trial court abused its discretion by instructing the jury on professional negligence rather than ordinary negligence.  The instructions given misled the jury and resulted in prejudice to plaintiff, especially in light of the fact that the court ruled on the proper standard of review on the last day of trial.  Therefore, a remand for a new trial is required.

Plaintiff also claims that certain prejudicial argument and evidence presented by defendant--that any award would be payable to plaintiff and that plaintiff was not related to decedent--deprived him of a fair trial.  

Prior to trial, plaintiff filed a motion 
in
 
limine
 seeking to "exclude during the trial any reference to whom a jury award would be received."  The trial court denied the motion, finding that if plaintiff was going to testify, defense counsel had the right to inquire as to his interest in the estate.  Plaintiff had listed himself as a potential witness at trial.  

In his opening statement, defense counsel stated:

"Lastly, ladies and gentlemen, you're going to hear testimony from the [p]laintiff, Mr. Myers.  You're going to hear testimony of his relationship to Ms. Prillmayer prior to August 16[,] 2000.  That testimony will be, and we expect the evidence to be as it's presented to you, Mr. Myers was not related by blood to Ms. Prillmayer.  Mr. Myers was not relate[d] by marriage to Ms. Prillmayer.  Mr. Myers, we expect him to testify, he was a family friend or friend or social acquaintance of Ms. Prillmayer.  We're also going to show you Mary Prillmayer's last will and testament, which names Mr. Myers as the sole beneficiary of that estate.

*** 

You're going to hear testimony that Mr. Myers is the sole beneficiary under the estate; and that while the complaint seeks money for the personal injury for Mary Prillmayer between the dates of August 16[], 2000[,] and September 1[], 2000, that money, any award that's generated that's relevant to this lawsuit, goes to the [e]state of Mary Prillmayer.  The [e]state of Mary Prillmayer is the plaintiff, Mr. Myers.  Mr. Myers is also going to testify that he was not indebted, and Ms. Prillmayer was not indebted to him; that there were no outstanding bills or anything that will go to pay off anything as a result of this lawsuit.  That's the kind of evidence you're going to hear."

Plaintiff objected during the opening statement and, following defense counsel's opening statement, moved for a mistrial.  The trial court denied the motion.

Plaintiff did not testify during the presentation of his case.  Defendant, however, called plaintiff as an adverse witness.  Defendant did not ask plaintiff substantive questions about the incident or decedent but inquired primarily as to plaintiff's credibility and bias (including plaintiff's relationship to decedent and that decedent's nieces and nephews were not involved in the lawsuit).  The only substantive questions asked of plaintiff included the date decedent died and the fact that decedent was admitted into the nursing home because she was unable to continue living at home.  Plaintiff objected to this line of questioning.  The court overruled the objection.  

During closing arguments, defense counsel stated the following:

"Lastly, you heard from the [p]laintiff, Mr. Myers.  And he's sitting here today.  You heard him testify, he's not related to Mary Prillmayer by blood or by my [
sic
] marriage.  He's [e]xecutor of the [e]state, and any money that goes to the award, as a result of this case, doesn't go to Mary Prillmayer.  It goes to the [e]xecutor of the [e]state, Mr. Myers.  Now, I don't even want you to consider that.  I don't want that to be your first thought because you shouldn't even get that far in your deliberations in this case."

Improper argument may be a basis for reversal if the argument was of such a character as to have prevented the party from receiving a fair trial.  
Cooper v. Chicago Transit Authority
, 153 Ill. App. 3d 511, 524, 505 N.E.2d 1239, 1247 (1987).  Whether a party has been denied his right to a fair trial requires a consideration of the entire trial, and the trial court, having been in a unique position to make that determination, is afforded great discretion.  
Cooper
, 153 Ill. App. 3d at 523, 505 N.E.2d at 1247.  We review the trial court's determination for an abuse of discretion.  
Cooper
, 153 Ill. App. 3d at 523, 505 N.E.2d at 1247.

It is generally accepted that inquiry may be made to a witness's interest in the lawsuit because it is relevant to the witness's credibility.  See 
Sweeny v. Max A.R. Matthews & Co.
, 46 Ill. 2d 64, 70, 264 N.E.2d 170, 173 (1970); M. Graham, Cleary & Graham's Handbook of Illinois Evidence §607.7, at 375-76 (8th ed. 2004).  Moreover, a witness's relationship to other parties involved in the lawsuit may be relevant to credibility and bias.  See, 
e.g.
, 
Chapman v. Hubbard Woods Motors, Inc.
, 351 Ill. App. 3d 99, 105, 812 N.E.2d 389, 395-96 (2004).

The parties do not cite, nor did we find, any case law  directly on point.  Many cases have found, however, on different facts, that arguments that become unreasonable or highly prejudicial warrant reversal.  See 
Manninger v. Chicago & Northwestern Transportation Co.
, 64 Ill. App. 3d 719, 729, 381 N.E.2d 383, 391 (1978); 
Bisset v. Village of Lemont
, 119 Ill. App. 3d 863, 865, 457 N.E.2d 138, 140 (1983).  Here, defense counsel's arguments went too far.  

Defendant argues it was entitled to challenge plaintiff's bias and credibility because plaintiff listed himself on his witness list.  According to defendant, if its conduct was improper, then plaintiff's counsel "pulled a neat trick," creating error at trial through his own conduct of purposely not calling himself so that the opening statement created error. 

That defendant thought plaintiff would testify explains the comments made during the opening statement.  It does not explain, however, the testimony elicited by defendant during the trial or the statements made in closing argument.  

Reviewing the testimony elicited by defendant, it appears defendant called plaintiff only to establish bias and discredit plaintiff's credibility.  However, plaintiff did not testify in his own case, and defense counsel had nothing to discredit.  Defense counsel, through his questioning of plaintiff, his opening statement, and his closing statement, invited the jury to disregard the law and decide the case based on the worth of plaintiff.  Such action was improper and warrants reversal.

III. CONCLUSION

Therefore, for the reasons stated herein, we vacate judgment entered in favor of defendant and remand this cause to the trial court for a new trial. 

Reversed and remanded.

COOK, P.J., and KNECHT, J., concur.